# Pittsburgh *v.* Pittsburgh Railways Company, Appellant.

*Street railways—Municipalities—Duty to clean streets—Demand for performance—Contracts.*

1. He who assumes the performance of a fixed duty at a definite time voluntarily imposed cannot justify a neglect or failure on the ground of the absence of a subsequent request that he perform the duty.

2. Where a street railway company obtains municipal consent to enter and operate a railway upon the streets of a city it is charged with notice of its duty to keep the streets clean as required by the ordinance granting consent and it assumes the performance of this duty without further notice or request from the city.

*Statements of claim—Assumpsit—Failure to demur—Practice, C. P.—Appeals.*

3. Where a statement in assumpsit is deemed inadequate or insufficient under the practice act or that it does not disclose clearly the plaintiff's claim so as to enable the defendant to prepare its defense, the proper way for the defendant to raise these questions is by a demurrer or a rule for a bill of particulars. ..

*Evidence—Admissions—Affidavits of defense—Practice, C. P.*
4. Admissions in affidavits of defense are not an exception to the general rule that a party may prove his claim by showing the voluntary admissions of his opponent.

*Practice, C. P.—Assumpsit—Juries—Sending out calculations and statements of claim.*
5. In an action of assumpsit to recover moneys alleged to be due

the plaintiff either or both parties may send out with the jury a calculation and statement of claim based on evidence produced at the trial. Such statements and calculations are not evidence, but are simply given to the jury to show the several items and the manner by which the party arrives at his demand.

*Street railways—Municipalities—Duty to clean streets—Operating companies.*

6. In an action of assumpsit brought by a city against a street railway company to recover the cost of cleaning streets occupied by the tracks of the street railways operated by the defendant company from 1902 to 1907, based upon the assumption by the defendant company of the obligations of the underlying companies owning the lines which it operated, it appeared that all the underlying companies obtained their rights to use the streets on condition that they should keep them clean, in some instances from curb to curb, and in others between the tracks and one foot outside thereof. On January 1, 1902, the defendant became the successor of the traction companies and thereafter operated the street railways in the city, having previously secured control of the street railway lines not included in the two traction companies. The city in 1890 enacted a general ordinance relating to the entry upon and use of the streets by street railway companies and providing therein that any such company should clean the space within its tracks and one foot outside thereof. In 1895 the city organized a street cleaning department which thereafter cleaned the streets from curb to curb, including the part of the street between the car tracks and one foot outside thereof on streets occupied by defendant company. In the affidavit of defense, put in evidence, the defendant conceded that since January 1, 1902, it had assumed the obligations and conditions relating to the cleaning of streets within the city imposed by the charters and franchises of the underlying companies and that the street cars were operated over routes in the city covered by traction systems and that rights were granted to the traction companies operating these systems subject to the general ordinance of 1890, which "abrogated and rendered of no effect" the duty to clean streets imposed by any act of assembly or other ordinance. The action was brought for $704,946 as representing the cost of cleaning the streets in question. The city, under instructions of the court was permitted to recover only for cleaning that part of the streets lying between the tracks and one foot on either side thereof. *Held,* that a verdict and judgment for plaintiff for $226,000 should be sustained.

Argued Oct. 24, 1911. Appeal, No. 160, Oct. T., 1911, by defendant from judgment of C. P. No. 4, Allegheny Co., Fourth T., 1907, No. 240, on verdict for plaintiff in case of City of Pittsburgh v. Pittsburgh Railways Company. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover cost of cleaning city streets. Before SWEARINGEN, P. J.

The opinion of the Supreme Court states the case.

Verdict for plaintiff for $226,000.00 and judgment thereon. Defendant appealed.

*Error assigned,* among others, outlined in the opinion of the Supreme Court, was in refusing motion for judgment n. o. v.

*Edwin W. Smith, of Reed, Smith, Shaw & Beal,* with him *Wm. M. Robinson,* for appellant, cited on the question of necessity of notice to clean. Philadelphia v. Hestonville &c. Pass. R. R. Co., 177 Pa. 371; Philadelphia v. Railway Co., 143 Pa. 444; Pennsylvania R. R. Co. v. Duquesne Boro., 46 Pa. 223.

*C. K. Robinson,* with him *C. A. O'Brien* and *C. Elmer Bown,* for appellee.—The defendant, having exclusive knowledge as to its contractual relations with all the companies, if it deemed the statement of claim inadequate in fastening the liability of the underlying companies upon it, should have demurred. It should not have filed its affidavit of defense, admitting this liability, and gone to trial on issue joined: Zerger v. Sailer, 6 Binney 24; Friedly v. Scheetz, 9 S. & R. 156; Athens Car & Coach Co. v. Elsbree, 19 Pa. Super. Ct. 618; Shaw v. Redmond, 11 S. & R. 27; Coble v. Zook, 6 Pa. Super. Ct. 597; State Insurance Co. v. Todd, 83 Pa. 272; Rice v. Insurance Co., 17 Pa. Super. Ct. 261.

It was entirely proper to permit the plaintiff to offer an express admission of the affidavit of defense. Farmers' & Merchants' National Bank v. Nat'l. Bank, 30 Pa. Super. Court 271; Bowen v. DeLattre, 6 Whart. 430.

Formal notice of the intention of the city to clean these streets from day to day was not necessary. 36 Cyclopedia of Law and Procedure, 1412; New Haven v. Railroad Co., 38 Conn. 422; District of Columbia v. R. R. Co., 15 D. C. Reps. 214.

Where liability proved is of the same kind and nature as that averred but for a smaller sum, the variance is not material. Rice v. Insurance Co., 17 Pa. Super. Ct., 261; State Ins. Co. v. Todd, 83 Pa. 272; Ben Franklin Fire Ins. Co. v. Flynn, 98 Pa. 627; Plate v. Vega, 31 Cal. 383; Short v. McRea, 4 Minn. 119; Murdoch v. Finney, 21 Missouri 138.

OPINION BY MR. JUSTICE MESTREZAT, January 2, 1912:

It would have been well if this case had been submitted to a referee. The voluminous record discloses the difficulty which a jury would have in dealing with the questions of fact submitted to them. For some reason, not apparent, it was thought best to try the case before a jury and let it consider the almost innumerable items contained in the plaintiff's claim and which had to be dealt with as matters of fact. The case was one peculiarly for a referee, and we are satisfied that counsel for both parties must be of that opinion now, if not prior to the trial before the jury.

The action was assumpsit brought by the City of Pittsburgh on July 22, 1907, to recover the cost of cleaning the streets of the City occupied by the tracks of the street railways operated by the defendant company during the annual periods ending January 31st in the years 1902 to 1907 inclusive. The claim of the City, as appears by the statement, is based upon the assumption by the defendant company of the obligations

of the underlying companies owning the lines which it operated. All the underlying companies obtained their rights to use the streets of the City on condition that they should keep them clean, in some instances from curb to curb, and in others between the tracks and one foot outside thereof. On January 1, 1902, the Pittsburgh Railways Company, the defendant, became the successor of the traction companies and has since been operating the street railways in the City of Pittsburgh. It had previously secured control of the street railway lines not included in the two traction companies.

The City, on February 25, 1890, enacted a General Ordinance relating to the entry upon and use of its streets by street railway companies or by companies operating passenger or street railways and providing regulations pertaining thereto for the public convenience and safety. Prior to this ordinance, the obligations of the railway companies in the use and cleaning of the streets were imposed by special ordinances which granted the right to such companies to enter upon and use the streets. Some of these ordinances required the railway company to clean the streets from curb to curb. By paragraph three of section one of the ordinance of 1890, the company was required to clean the space within its tracks and one foot outside thereof, and by section three, railway companies were prohibited from entering upon and using the streets until after they had procured the consent of councils, "by an ordinance other than this one * * * , granting such rights to such companies," and had accepted all the conditions and provisions of the ordinance of 1890.

In 1895 the City organized a department for cleaning its streets and thereafter this department cleaned the streets from curb to curb, including the part of the street between the street railway tracks and one foot outside thereof which, under the General Ordinance of 1890, the defendant company was required to keep clean. This action was brought to recover the cost of

cleaning the streets on which the defendant operated its street railway, but, under the instructions of the court, the city was permitted to recover only for cleaning that part of the streets lying between the tracks and one foot on either side thereof.

The aggregate of the plaintiff's claim was $704,-946.40, alleged to be the cost of cleaning the streets for the five years ending January 31, 1907. The case was tried before a jury and resulted in a verdict for the plaintiff for $226,000. A motion was made for a new trial and also for judgment for the defendant non obstante veredicto. Both motions were overruled in elaborate opinions by the learned court below and judgment was entered on the verdict. From this judgment the defendant company has appealed.

There are thirty assignments of error supported by an elaborate argument of the learned counsel for the appellant company. Its contentions may be summarized as follows: (a) The statement of claim is insufficient in that it does not set forth in full the ordinances referred to in Exhibit A, or any contracts, agreements or leases connecting the defendant with any of the companies named in the exhibit, and hence the ordinances were not admissible in evidence; (b) the ordinances relating to street railways subject to the General Ordinance of 1890 were not admissible so far as they were not referred to in the exhibit; (c) the cost of expense of cleaning the streets shown by the evidence had no relation to the figures set forth in Exhibit B; (d) there could be no recovery without a prior demand on defendant to do the work, and it is not alleged that any demand was made; and (e) the system adopted in cleaning the streets was extravagant and the charges are excessive.

The statement avers that the defendant company by reason of operating and controlling the street railways and traction systems is responsible for the obligations and conditions attached to and forming a part of the

charters and franchises of the underlying companies whose lines it operates. There is attached to the statement a schedule marked Exhibit A which contains a reference to the acts of assembly and the ordinances authorizing the construction and operation of street car lines and relating to the duty of the railway and traction companies to clean the streets. It is averred that those companies neglected and refused to keep clean the streets traversed by the railway tracks, and the City had been obliged to do the work at a large expenditure of money, and that the defendant became liable for the moneys thus expended. There is also attached to the statement of demand a statement, marked Exhibit B, showing the streets having railway tracks thereon, alleging liability on the defendant for cleaning all the streets between the tracks and one foot outside thereof, and liability for cleaning certain specified streets from curb to curb. The statement shows the proportionate cost of the work of cleaning which the defendant should pay and the proportion of money expended by the plaintiff in maintaining the street cleaning department for which, it is alleged, the defendant was liable. The statement further discloses the number of times the streets had been cleaned and the total cost thereof, and avers that the cost and expenditure are reasonable and proper and what the services were worth.

We think the statement, while not as definite as it should be, is sufficiently full and clear to advise the defendant of the particulars of the plaintiff's claim, and of what the defendant company would have to meet on the trial of the cause. The exhibits contain a reference to the various acts of assembly and city ordinances authorizing the construction and operation of the street car systems in the city now controlled by the defendant, and also a reference to the clauses in the acts and ordinances imposing the obligation to clean the streets and setting forth in detail the work re-

quired to be done and cost thereof. The statement avers that the defendant was responsible for the obligations of the underlying companies, that those companies had not cleaned the streets and that the City had to do the work. As suggested by the learned trial judge in his opinion discharging the rule for judgment n. o. v., "its (the defendant's) liability was averred, the streets upon which its tracks were laid were specified, and the responsibility under the General Ordinance for all streets was distinctly affirmed." There was no demurrer to the statement nor request for a bill of particulars. The plea was non assumpsit. The court permitted a recovery only upon the obligations imposed by the General Ordinance, thus excluding from the consideration of the jury liability alleged in the statement under special ordinances. No recovery was had for sweeping snow or for cleaning streets from curb to curb, or for expenses for maintaining the department. These were claimed in the statement but were abandoned on the trial by the plaintiff or the evidence supporting them was excluded.

Had the defendant company demurred in the first instance it might have been difficult to sustain the statement. If deemed inadequate or insufficient under the practice act, or that it did not disclose clearly the plaintiff's claim so as to enable the company to prepare its defense, the proper way to raise these questions was by a demurrer or a rule for a bill of particulars. Having pleaded the general issue and filed an affidavit of defense to the merits of the plaintiff's claim which avers no defect in the statement, it is now too late to allege that the statement is insufficient in not setting out the claim in greater detail. The statement was sufficient and the evidence offered was properly admitted.

For the purpose of showing that the responsibilities which attached to various street railway companies under the General Ordinance of 1890 and under the

special ordinances set forth in Exhibit A had been assumed by the defendant company since 1902, the plaintiff offered in evidence paragraph one of the affidavit of defense as follows: "That while it may not be true that the defendant is responsible for all of the obligations and conditions attached to and forming a part of the charters and franchises of the various companies whose lines defendant operates, the defendant is willing to admit that in so far as such obligations and conditions relates to the cleaning of streets in the City of Pittsburgh it has assumed the responsibility of such companies since the first day of January, 1902, at which time its operating contracts with the United Traction Company and the Consolidated Traction Company became effective." The plaintiff also offered in evidence for the purpose of showing an admission of liability on the part of certain traction systems, under the General Ordinance of 1890, paragraph two of the affidavit of defense, which, in part, is as follows: "That nearly all the street cars are operated over routes in this city covered by certain traction systems, and that rights were granted to the traction companies operating these systems, subject to the General Ordinance dated February 25, 1890, which provided that the streets should be kept clean and in repair between the tracks and one foot outside, and the defendant asserts that in so far as it has any liability for the cleaning and repair of streets it is under this traction ordinance or the General Ordinance of the City of Pittsburgh, passed on the 25th day of February, 1890; that any act of assembly or other ordinance which has imposed any other duties of cleaning the streets or keeping them in repair has been abrogated and rendered of no effect by the passage of these later ordinances." Under the admissions in the affidavit, which are in evidence, the defendant concedes, as will be observed, that since January 1, 1902, it assumed the obligations and conditions which relate to the cleaning of streets

within the city imposed by the charters and franchises of the underlying companies. It also appears by these admissions that the street cars are operated over routes in the city covered by traction systems, and that rights were granted to the traction companies operating these systems subject to the General Ordinance of 1890, which "abrogated and rendered of no effect" the duty to clean streets imposed by any act of assembly or other ordinance. The plaintiff was therefore not required to show the charters and franchises of the underlying companies nor the contracts, agreements or leases connecting the defendant with those companies. The affidavit admits that the charters of these underlying companies required them to keep the streets clean, as does also the General Ordinance of 1890, and that the defendant assumed this obligation since January 1, 1902. In view of these admissions it was immaterial, so far as showing the liability of the underlying companies to clean the streets was concerned, whether the charters of those companies were put in evidence or not, and, therefore, their admission did the defendant no harm.

The court properly admitted in evidence, on the plaintiff's offer, the two paragraphs of the affidavit of defense. They contained admissions which were adverse to the defense and tended to sustain the plaintiff's claim. A party may prove his claim by showing the voluntary admissions of his opponent, whenever and wherever made, and whether verbal or in writing. Admissions against interest are always admissible in the trial of a case to sustain or defeat a cause of action. At any time or under any circumstances, if the admission is voluntarily made it may be given in evidence by the opposite party. Admissions in affidavits of defense are not an exception to the general rule. The purpose of an affidavit of defense is primarily to prevent a summary judgment; but it may become evidential by containing admissions or statements adverse to

the party who made it.  It is the uniform practice in this state for the plaintiff to offer any part or parts of an affidavit of defense which show admissions by his opponent sustaining the plaintiff's claim.  He may offer those parts of the affidavit for the specific purpose of showing such admissions, and the offer and the evidence will be confined to the purpose.  He is not required to offer the whole affidavit and is not bound by any part of the affidavit which he does not specifically offer, nor can the defendant use the other parts of the affidavit to relieve himself from supporting those averments by proof.  Such parts only of the affidavits as are offered for the specific purpose are in evidence and to be considered by the jury.

Paragraph three of the General Ordinance of 1890 provides that a passenger street railway company "shall keep clean and maintain such pavement in good order, condition and repair so long as its tracks shall be used."  The acceptance of this ordinance imposed upon street railway companies an absolute duty to clean that portion of the streets between its tracks and one foot outside thereof.  The obligation is definite and mandatory.  When a company obtains municipal consent to enter and operate a railway upon the streets of a city it is charged with notice of its duty to keep the streets clean as required by the ordinance.  It assumes the performance of this duty without further notice or request from the city.  The ordinance itself is notice to the company that it must keep the streets clean.  Notice of the necessity for the observance of the ordinance and of cleaning the streets is brought to its attention every day.  It sees the municipality cleaning those parts of the streets which the ordinance requires the company to clean, and, therefore, there was no necessity for notice to the defendant company to perform its duty in this respect.  He who assumes the performance of a fixed duty at a definite time voluntarily imposed cannot justify a neglect or failure on

the ground of the absence of a subsequent request that he perform the duty. In other words, he need not be told to do what he already knows it is his duty to do. His failure to act under such circumstances imposes liability for the necessary consequences. There is no provision in the General Ordinance or any special ordinance which requires the railway company to clean the streets after notice or on demand to do so. Nor is there any provision in the ordinance imposing a conditional duty on the railway company to clean the streets; on the contrary the duty is unconditional and obligatory that the company "shall keep clean and maintain such pavement in good order, condition and repair so long as its tracks shall be used." The duty therefore was imperative and the time of its performance was absolutely fixed. There is no merit whatever in the contention that a prior demand upon the defendant to clean the streets was a prerequisite to the right of the plaintiff to maintain this action.

This is not a claim for the cost of paving or repaving a street where a prior duty devolves upon the municipality of determining the character of the pavement and the time when it shall be laid. The municipal discretion in such matters must be first exercised before the party is required to perform the service. In such cases it is necessary that notice to act be given the party whose duty it is to pave the street. The cases cited by the appellant are of this character, and were determined upon facts which required a prior notice to impose responsibility upon the defendant company.

We have held that it is the practice in this state to send out with the jury calculations and statements of a claim in the trial of a scire facias, in an action of replevin, and in an action of trespass for mesne profits. There has never been any doubt, and it has been ruled time and again, that in an action of assumpsit to recover moneys alleged to be due the plaintiff that either or both parties may send out with the jury a calcula-

tion and statement of claim based on evidence produced at the trial. It is everyday practice. In holding it proper in such cases to send out with the jury a "statement and set off and calculations made of the same," Mr. Justice Gibson said in Frazier v. Funk, 15 S. & R. 26, 27: "With reasonable caution on the part of the Court, no unfairness can be practiced in sending out a paper such as this; of its consequences, no test is so good as experience, and that proves not only its fairness, but its great utility. Indeed, where accounts are submitted to a jury, it would be impossible to get along without it. It originated with mutual convenience and the agreement of parties; but it has prevailed so long and so uninterruptedly, as to have grown to be a rule of practice, and as such we are not bound to disturb it." Such statements and calculations are not evidence, and in this case the court distinctly told the jury they must not be considered as such, but are simply given to the jury to show the several items and the manner by which the plaintiff arrived at his demand. Of course, every item in the claim must be proven to the satisfaction of the jury, otherwise it must be stricken from the claim and not allowed to go to the jury. When the plaintiff offers to send out his calculation or statement, if there is any objection, it must be submitted to the court who will see that it contains no item which is not supported by evidence. It is not the duty of the court however to say that the evidence is not sufficient to support any item, but only to see that there is evidence which if believed by the jury will sustain the item. If the opposite party has any objection to the statement it is his duty to call the attention of the court to the disputed items and ask that they be stricken out, and, if he fails to do so, and only files a general objection to the statement, we will not reverse: Kline v. Gundrum, 11 Pa. 242; Terry v. Drabenstaat, 68 Pa. 400. In the case in hand, it was obviously necessary that a statement of the plain-

tiff's claim, including the several items thereof and the tabulations and calculations, should be sent out with the jury. The defendant company was at liberty to send out a tabulated statement if it desired, and should have done so, if it thought the plaintiff's statement erroneous in any particular. The trial occupied more than two weeks of the time of the court, and Exhibit B showing the items of expenditure and other data fill one hundred pages of the paper-book. Without the statement the jury would have been at sea without compass or rudder. Twelve accountants, sitting as a jury, could not have intelligently considered and arrived at a correct conclusion without a tabulated statement showing the several items and a calculation showing the final result. The tabulations made by the plaintiff and sent out with the jury were all based upon testimony which had been delivered before the jury, and as the several items of the claim were stated, the jury was enabled to consider each item and to apply the evidence to it. The jury was admonished that the statement and tabulations were "merely claims of the plaintiff as to what the evidence shows, and unless you find that the evidence corresponds with them, both with respect to the time that was occupied, the number of men employed, when the work was done, and all those matters, you will disregard them." Under the circumstances, and considering that the verdict was, in the judgment of the trial court, very reasonable, being less than one-third of the claim, we can see no just ground for holding it error to send out the tabulations with the jury. Sending papers and exhibits out with a jury is in the sound discretion of the court: Little Schuylkill Nav., R. R. & Coal Co. v. Richards, 57 Pa. 142; Ott v. Oyer, 106 Pa. 6; Person & Riegel v. Lipps, 219 Pa. 99.

The fact that the cost of cleaning the streets as shown by the evidence was not as large as that set forth in Exhibit B, or that the system adopted in clean-

ing the streets was alleged to be extravagant and the charges excessive do not require us to reverse the judgment. They are matters of which the trial court is far more able to judge intelligently than we are. It is seldom that a plaintiff proves an unliquidated demand in the exact amount set out in his statement, and he is not required to do so. He avers the amount of his claim, and it is the province of the jury to determine whether he has proved the whole or any part of it. Likewise, whether the system of cleaning the streets was extravagant and the charges excessive, as alleged, were matters for the jury under proper instructions by the court. They were necessarily questions of fact and could not be withdrawn from the jury.

We have dealt with the controlling questions in the case without taking up seriatim the thirty assignments of error. The court committed no reversible error in the conduct of the trial, and we see no reason for interfering with the judgment. Under the pleadings, evidence and admissions in the case, there is no doubt of the liability of the defendant company for the cost and expenses incurred by the City in cleaning the parts of the streets between the railway tracks and one foot outside thereof (the obligation imposed by the General Ordinance), and the only real question in dispute on the trial was the amount of the expenses legally incurred by the City in doing the work assumed, but not performed, by the defendant company.

The judgment is affirmed.