Pennsylvania Company, etc., *v.* Philadelphia Electric Company, Appellant.

Argued May 25, 1938. Before MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. Clarke Mason,* with him *Thomas B. K. Ringe, A. Allen Woodruff* and *Morgan, Lewis & Bockius,* for appellant.

*Earl G. Harrison,* with him *Edmund R. Finegan* and *Maurice Bower Saul,* of *Saul, Ewing, Remick & Saul,* for appellee.

OPINION BY MR. JUSTICE STERN, June 17, 1938:

This is an action of assumpsit to recover the sum of $48,019.28, with interest, alleged to have been delivered in cash by plaintiff bank to defendant and not repaid, the money being provided for the payment of wages due defendant's employes at its branch office at 23d and Market Streets, Philadelphia. It is defendant's contention that it never received the money. The controversy was submitted to a jury which found for plaintiff in the amount claimed. The facts giving rise to the litigation are, happily, quite unusual.

Starting in the spring of 1933, the bank, in which defendant was a depositor, began the practice of supplying funds for what, generally speaking, may be termed defendant's pay-roll purposes. The money was transported in the bank's armored trucks and disbursed at defendant's office by a teller employed by the bank. In November, 1933, plaintiff brought to defendant's attention a new rule of the Philadelphia Clearing House Association, to go into effect in January, 1934, which prohibited the delivery by member banks of "pay rolls or other funds in any form whatever, . . . outside of and away from the premises of the bank." A conference to discuss this rule was had between two of plaintiff's vice-presidents, defendant's assistant treasurer, and defendant's paymaster. At the trial the recollections of these gentlemen as to their conversation on that occasion varied. Accepting (as we must in view of the jury's verdict) plaintiff's version as the correct one, it appears that its representatives expressed to those of defendant their opinion that, according to the "spirit" of the rule, the bank could not render any outside pay-roll service. It was therefore agreed that, beginning in January, 1934, defendant would, at its own expense, employ

Brink's Express Company, an independent carrier, to transport the funds in the trucks of that company. It being suggested by defendant's assistant treasurer that his company had no trained person who could accurately handle the money and perform the work of a disbursing teller, plaintiff agreed that it would "lend" or "supply" an employe to defendant for that purpose until such time as defendant could train one of its own staff for the work, provided that if found to be a violation of the clearing house rule this part of the plan was thereupon immediately to cease.

In pursuance of the arrangement thus made plaintiff regularly, twice a month, delivered the funds to Brink's Express Company, which gave receipts for the money, every such receipt on and after April 18, 1934, being in the sum of $48,500. On December 20, 1934, the money having been delivered in the usual way by plaintiff to the express company, receipted for by the latter in the same amount, and carried by it to defendant's branch office, was delivered to plaintiff's teller who came there for the purpose of disbursing it accompanied by an armed guard, also in the general employ of plaintiff. It was the custom for defendant to give its employes pay checks in the amounts of their respective wages, drawn on the Philadelphia National Bank where defendant likewise maintained a deposit account, and as these checks were presented to the disbursing teller the employes received from him the designated amounts. It was also the custom for the teller, at the close of the day, to return surplus funds, if any, together with the pay checks, to plaintiff bank, which thereupon presented the checks to defendant and received from it a single check, also drawn on the Philadelphia National Bank, covering the sum total of the several checks for which the funds had been expended.

On the day in question, while the disbursing was under way, and after $1,368.78 had been paid out, armed bandits invaded the premises and seized most of the re-

maining funds. Some of the robbers were subsequently captured and convicted, but, as far as the record discloses, no part of the money taken by them was recovered.

Plaintiff contends that under the arrangement between it and defendant, title to the funds passed at the time they were delivered at the door of the bank to Brink's Express Company for transportation to defendant's office. Defendant, on the other hand, maintains that the transaction consisted merely of a "cashing" of the employes' checks by plaintiff at defendant's office instead of on its own premises, that the money while in the possession of the disbursing teller still belonged to plaintiff, and that none of defendant's funds came into play until the ultimate stage of the transaction when they were used to pay the check given plaintiff in exchange for the individual pay checks.

While undoubtedly there are some circumstances in this peculiar situation which lend color to defendant's theory of the relations between the parties, defendant cannot sustain its position that the trial judge should have given binding instructions in its favor. It is true that when the funds were delivered by the express company at defendant's office they were placed in the hands and charge of one who was in the employ of, and paid by, plaintiff bank, but it is a familiar principle of law that "Where one person lends his servant to another for a particular employment, the servant, for anything done in that particular employment, must be dealt with as a servant of the man to whom he is lent, although he remains the general servant of the person who lent him. . . . The test is whether, in the particular service which he is engaged to perform, he continues liable to the direction and control of his master, or becomes subject to that of the party to whom he is lent or hired": *Puhlman v. Excelsior Express & Standard Cab Company,* 259 Pa. 393, 397; *Atherholt v. William Stoddard Company,* 286 Pa. 278; *Venezia v. Philadelphia Electric*

*Company,* 317 Pa. 557. As the agreement between the parties provided that the disbursing teller was temporarily to be "lent" or "supplied" by plaintiff to defendant, the fact that he was generally in plaintiff's employ loses the significance it otherwise would have. The jury were instructed to consider the employment status of this teller, not as conclusively determining the ownership of the money, but as a factor, together with the other evidence, bearing on that problem.

When the funds were delivered by plaintiff to Brink's Express Company, the only record or voucher which plaintiff had to evidence the transaction was the receipt for the money given by the carrier, and defendant contends that if the bank at that time was parting with its title it would have been necessary for it to receive a check, draft or other appropriate instrument upon the basis of which it paid out the money. Though a matter for the consideration of the jury, this argument is not conclusive. While a bank, by virtue of the implied contract arising from the usage of banking, is entitled to demand that an order of a customer to transfer a deposit or pay out funds be in writing, nevertheless, it may, if it so desires, waive its right in that respect, and may legally make such payment or transfer on an oral order, the chief advantage of a written instrument being for evidential purposes: see cases collected in 2 A. L. R. 175.[1]

As outweighing the features of the situation thus discussed there is much in the transaction to support the interpretation that plaintiff urges should be placed upon it. The arrangement entered into between the parties, after full discussion, was for the very purpose

---

[1] By the Act of May 15, 1933, P. L. 624, art. X, section 1002, "A bank or a bank and trust company shall have the power to receive money on deposit. It shall repay such deposits, upon due demand, in such manner and upon such notice as may be agreed upon, or in accordance with such regulations as it shall from time to time establish."

of complying with the new rule of the Clearing House prohibiting the bank from delivering pay rolls or other funds outside of its own premises. If the title to the money remained in the bank during the process of disbursement on defendant's premises, the rule was clearly being violated, and there is no intimation in the record that either party intended, or believed that it was committing, such a violation. The jury naturally were impressed by the fact that, according to the arrangement under which the parties operated, the money was delivered to defendant's contractee for transportation, and that the disbursing teller was the agent and employe of defendant while in charge of the funds. The jury were also justified in taking, and evidently did take, the view that it never was intended that the pay checks should be honored by defendant in the ordinary manner through presentation at a bank, but that, though checks in form, they were really intended as receipts or vouchers, to serve plaintiff as evidence of the sums it had paid out, and to be exchanged, when presented to defendant, for the latter's single check by means of which plaintiff was to obtain repayment for the money it had advanced. This latter feature of the transaction was adopted at the request of defendant, possibly, as suggested by one of its witnesses, to escape check taxes. As the trial judge correctly instructed the jury, title passes from one party to another when the parties intend by their agreement that it shall pass, and it was solely for the jury to say, in the light of the contradictory testimony presented and the various inferences that might be drawn therefrom, when the title to these particular funds did pass.

Defendant challenges the sufficiency of the proof of authority of its assistant treasurer to agree with plaintiff's representatives as to the new plan for handling the pay-roll funds. The assistant treasurer himself testified that he "co-operated with the paymaster in working out the details of the cash transactions of the company so

far as they related to pay rolls," and a jury might readily infer that an assistant treasurer, especially in conjunction with the company's paymaster, was, by virtue of the duties and functions of his office, authorized to enter into an arrangement by which, instead of the company's employes being obliged to go to a bank to cash their pay checks, the company would procure the necessary funds from the bank and itself disburse them. Moreover, the arrangement was in force for a year without question on the part of defendant or any of its officials.

The jury were instructed they could not find a verdict for plaintiff unless they were able to ascertain from the testimony the specific amount it was entitled to recover. Defendant insists that the evidence was not sufficiently accurate for this purpose. It was shown, however, that the various bundles of money were counted and prepared at the Federal Reserve Bank, that plaintiff's clerk "fanned" them after receiving them from that bank, making certain that every bill in each package was of the proper denomination, and that part of the money was also counted at defendant's office by the disbursing teller. Furthermore, one of the bandits was produced as a witness and testified as to the amount which he and his companions had stolen and which he said he counted with great care in order to insure an equal distribution among the robbers. While the figure given by him differed slightly from the "strap-count" made by plaintiff's clerk and which was the amount on which plaintiff's claim in this action was based, it was in excess of that figure and therefore justified the verdict rendered, credit having been given to defendant for currency not stolen amounting to $480.72.

Defendant objected to the admission of evidence as to the manner in which paper money is customarily machine-counted by the Federal Reserve Bank and placed in strapped bundles. While such evidence might not of itself be competent to establish the exact sum contained

in the packages on this particular occasion, it was admissible as corroborative and explanatory of the other testimony on this point: *Meighen v. The Bank,* 25 Pa. 288. Where there is an invariable regularity of action, a fixed and constant procedure, it tends strongly to show the occurrence of a given instance: Wigmore on Evidence, 2d ed., 325, section 92.

Defendant asserts there was no evidence that the bundles in the present case were prepared at the Federal Reserve Bank or came from that source. There was, however, some testimony to that effect, and counsel for defendant apparently assumed the fact, as indicated by questions asked in cross-examination. Moreover, no exception was taken to the trial judge's statement in his charge that such testimony had been given, and, while objection was made to evidence concerning the method of counting which was employed by the Federal Reserve Bank, it was placed upon a ground other than that here advanced and thereby the right was waived to present the reasons now urged for excluding the testimony: *Messmore v. Morrison,* 172 Pa. 300.

Defendant claims that the sum of money for which recovery was sought was not so precisely established as to warrant an allowance of interest. The suit being in assumpsit for money advanced, and the jury having found, from competent and sufficient evidence and in the absence of contradictory testimony, the exact amount delivered by plaintiff and not repaid to it, and a demand for the repayment of this amount having been made by plaintiff on the very afternoon of the robbery,[2] there is no reason why interest on the amount due should not be recoverable. It was also within the sound

---

[2] Defendant makes some point of the fact that plaintiff did not tender to it the pay checks which had been "cashed" immediately prior to the robbery, but, as defendant knew, there was no question but that plaintiff was ready to turn over these checks on payment of its entire claim, liability for which was repudiated by defendant.

discretion of the court to allow plaintiff's counsel to submit to the jury a written memorandum of the amount of the verdict requested, with a calculation of the interest: *Pittsburgh v. Pittsburgh Railways Co.*, 234 Pa. 223, 234, 235, 236.

There are several minor objections embodied in defendant's assignments of error. It attempted at the trial to introduce testimony as to a change in plaintiff's practice in regard to the delivery of funds at another of defendant's branch offices after the time of the robbery. This testimony was inadmissible, because it would not have thrown light upon the relations between the parties at the time the robbery occurred.

Another complaint is that the trial judge, after reading a supplemental charge to the jury, refused certain further instructions requested by counsel for defendant. The subject on which additional instructions were thus sought had been fully covered in the principal charge. Defendant further complains that the trial judge in his supplemental charge told the jury there was no evidence as to whether plaintiff's books and accounts showed the withdrawal of the funds for delivery to defendant. This statement was not seriously inaccurate; the only testimony on the subject was by the assistant treasurer of defendant to the effect that its deposit account showed no such charge.

Finally, defendant finds fault with the fact that the jury were instructed to give consideration to the contract between the express company and defendant, as well as to the rule adopted by the Clearing House Association; this, defendant contends, was allowing the jury to construe written documents. The trial judge expressly informed the jury that he did not present these documents to them for interpretation; they were submitted only in connection with the oral testimony, having been the basis of the conversations and the agreement between the parties. For such purpose they were

clearly admissible and the jury could not have failed to understand the limitations of their function regarding them.

On the whole the case was fully and ably tried. It received a maximum of intelligent consideration not only by counsel and court, but likewise by the jury, as indicated by a thoughtful question asked by them in a request for further instructions. While conceivably the finding might have been in defendant's favor, the verdict for plaintiff was at least equally justified, and the record is free from any semblance of substantial error.

The judgment is affirmed.