Blakey, Admrx., Appellant, *v.* Capanna et al.
Thompson, Admrx., Appellant, *v.* Capanna et al.

Argued January 12, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Charles W. Sweeney* and *E. Humes Garber,* with them *George H. Detweiler, Elton J. Buckley* and *James L. Baxter,* for plaintiffs, appellants Nos. 279 and 61, appellees Nos. 57 and 60, 58 and 59.

*I. Nathaniel Treblow* and *Abraham Wernick,* for defendants, Pasquale Capanna and Philip Capanna, appellants Nos. 57 and 60, 58 and 59, appellees Nos. 279 and 61.

*Raymond A. White, Jr.,* for defendant, Eastern Asphalt Company, appellee.

OPINION BY MR. JUSTICE DREW, April 11, 1944:

George Blakey and James R. Thompson, employees of Philadelphia Transportation Company, August 12, 1941, while repairing a trolley switch on Fifth Street, just north of Allegheny Avenue, in the city of Philadelphia, were fatally injured by being struck by a heavy dump truck owned by Pasquale Capanna and operated by his brother, Philip. The wives of these decedents, as administratrices of their estates, brought separate actions in trespass in which they named as joint defendants the truck owner, the driver, and Eastern Asphalt

Company. The cases were consolidated and tried together, and at the conclusion of plaintiffs' testimony as to agency, the trial judge entered a nonsuit in behalf of Eastern Asphalt Company. The jury returned verdicts against the remaining defendants in the sum of $4,000 for each plaintiff and in the sum of $2,000 for Helen Thompson, daughter of one of decedents, although she was not a party. Each plaintiff moved for a new trial because of the alleged inadequacy of the verdicts, and also to take off the nonsuit entered in favor of Eastern Asphalt Company for the reason that, under the testimony adduced, it was for the jury to determine whether or not the driver was an employee and under the control of that company when this unfortunate accident happened. Defendants, Pasquale Capanna and Philip Capanna, moved for judgment n. o. v. on the ground that there was no evidence to go to the jury on the question of the negligence of defendant-driver and the trial judge should have so declared as a matter of law.

After argument, the learned court below refused to remove the nonsuit entered in favor of Eastern Asphalt Company, because "The relation between Pasquale and Philip Capanna was that of master and servant but the relation between Pasquale and the Asphalt Company was that of contractor and contractee"; granted the motions for a new trial as to the other defendants, for the reason that "The verdicts for the plaintiffs were irrational and inconsistent and should be set aside"; and overruled the motions for judgment n. o. v., on the ground that the question of negligence of Philip Capanna, who was driving the truck involved, was for the jury to decide. These six appeals then followed, and being argued together, will be disposed of in one opinion.

From a careful reading of the testimony, all of which was given on the side of plaintiffs, we are convinced that the court below did not err in refusing to remove the nonsuit entered as to defendant, Eastern Asphalt Company. The driver was not that company's servant, and,

therefore, it was not liable. The record shows that aside from and clearly independent of his employment as a service man for Eastern Asphalt Company, Pasquale Capanna was engaged in the business of general hauling for anyone applying. For this purpose, he purchased and was the owner of two trucks, one of which was involved in this accident. The hauling service rendered included the furnishing of a driver and truck. At the time of the happening of this accident, the truck was engaged in hauling material for Eastern Asphalt Company, to which it had been hired by Pasquale with his brother and employee as driver. Under the hauling contract with the Asphalt Company, the driver was to take material from the company's plant to consignees designated by its superintendent. Separate and apart from his compensation received as service man and having no connection with it, Pasquale was paid weekly by the company for his truck and driver, sometimes on an hourly basis and sometimes on the amount of tonnage hauled. He garaged the vehicle at his own home, paid his driver and also supplied all necessary tires, gasoline and oil, as well as made the required repairs.

Under these circumstances, the burden of proof is upon plaintiff to show that the principle of respondeat superior applies: *Matlack v. Chalfant,* 69 Pa. Superior Ct. 49. "The presumption is that if the injury happened while the driver was operating the truck it was in the original master's business, as it occurred in doing the specific thing the driver was engaged by the owner to do, and to whom the driver was directly responsible": *Thatcher v. Pierce,* 281 Pa. 16, 21, 125 A. 302. It is well-settled that the distinguishing criterion in determining whether the employment is an independent one establishing the relation of contractor and contractee, or that of master and servant, is the right to control the means of accomplishing the result: *Lenhart v. Emmons & Co.,* 99 Pa. Superior Ct. 180. It is practically decisive of his independence, if the contractor employs, pays and

has full power to control the workmen: *Simonton v. Morton,* 275 Pa. 562, 119 A. 732, 14 R. C. L. 71.

In the instant case, the owner, Pasquale Capanna, retained all power of direction as to the operation of the vehicle. He never for a moment parted with that control of the management of the truck by the driver, whom he alone hired, paid and could discharge. The Asphalt Company was not in the business of hauling; that, however, was the business of Pasquale. He directed his driver to report with the truck to the yard of the company and its superintendent determined merely where the truck was to go and the load it was to carry. The company had nothing to do with the operation of the truck, nor did it attempt to assume such control. The employment was an independent one establishing the relation of contractor and contractee.

In *Wright v. Wilson Company,* 83 Pa. Superior Ct. 487, 489, where the facts were quite similar to those of the instant case, Mr. Justice Linn, when a member of the Superior Court, said: "The direction to one engaged in 'general hauling' to haul property to or from a specific place does not change the nature of, or convert a special employment into the general relation of master and servant; a man does not become answerable for the negligence of a taxi-driver, or of a carrier merely by specifying where he wishes to go or to have his property delivered. There is no evidence to contradict the testimony outlined above, which is clearly insufficient for the application of the rule respondeat superior." See also *Healey v. Carey, Baxter & Kennedy, Inc.,* 144 Pa. Superior Ct. 500, 19 A. 2d 852, where Judge Hirt, speaking for the Superior Court, held, in a very comprehensive opinion that the relation was that of contractor and contractee, rather than of master and servant, in an analogous situation to that with which we are here concerned.

The evidence in the instant case completely fails to establish that Eastern Asphalt Company controlled, had the right to control or attempted to control the manner

in which the truck was operated at the time of the accident.

As to the granting of a new trial to the other defendants, and the overruling of their motions for judgment n. o. v., there was some confusion in this phase of the case; the verdicts are questionable; that in favor of Helen Thompson is void; and to make certain that all concerned have a fair day in court and that justice will be done, we think it best to affirm these actions of the court below.

Judgment of nonsuit as to the defendant, Eastern Asphalt Company, and orders granting new trials as to defendants, Pasquale Capanna and Philip Capanna, and overruling their motions for judgment n. o. v., are affirmed.

DISSENTING OPINION BY MR. JUSTICE HORACE STERN:

We have held in an unbroken line of cases that when the evidence is conflicting, or when different inferences from it can reasonably be drawn, the question as to whether a borrowed servant is acting for the lending or the borrowing employer is for the jury. "If it is not clear from the evidence which of the defendants was the controlling master, then, inasmuch as the business of both was benefited, the question is for the jury to find, if they can, who exercised supervision and control at the time of the accident." *Lang v. Hanlon,* 302 Pa. 173, 178, 153 A. 143, 145; *Rosen v. Diesinger,* 306 Pa. 13, 18, 158 A. 561, 562; *Dougherty v. Proctor & Schwartz, Inc.,* 317 Pa. 363, 176 A. 439; *Pennsylvania Company v. Philadelphia Electric Co.,* 331 Pa. 125, 200 A. 18; *Walters v. Kaufmann Department Stores, Inc.,* 334 Pa. 233, 237, 238, 5 A. 2d 559, 561; *Joseph v. United Workers Association,* 343 Pa. 636, 639, 23 A. 2d 470, 472, 473.

I cannot agree with the majority opinion that "The evidence in the instant case completely fails to establish that Eastern Asphalt Company controlled, had the right to control or attempted to control the manner in which

the truck was operated at the time of the accident." I admit that there is evidence in the record from which it might be found that at the time of the accident Philip Capanna was the servant of his brother Pasquale Capanna and not of Eastern Asphalt Company, but there is also evidence to the contrary, sufficient, in my opinion, to warrant a jury in concluding that Eastern Asphalt Company had such right of control over the operator of the truck as to fasten upon it the liability of an employer.

Pasquale Capanna, the alleged owner of the truck, testified that he was a mere employee of Eastern Asphalt Company getting $35. a week, and that it was Eastern Asphalt Company which asked him "to get a truck" and "loaned" him the money to buy it.

The fact, if true, that Pasquale Capanna paid the wages of his brother, Philip, does not determine whose servant Philip was while he was hauling for Eastern Asphalt Company: *Robson v. Martin,* 291 Pa. 426, 430, 140 A. 339, 341. Indeed, *both* Pasquale Capanna and Eastern Asphalt Company might be liable, because, as was said in *Koontz v. Messer,* 320 Pa. 487, 492, 181 A. 792, 794: "That a servant of two masters may be acting within the scope of his employment by each at the same instant and in the performance of the same act, and may thereby make both liable, is clear, where both have a right of control over the servant, even though the masters are not joint employers and their purposes do not coincide." To the same effect is *Grasberger v. Liebert & Obert, Inc.,* 335 Pa. 491, 493, 6 A. 2d 925, 926.

Philip Capanna, the driver of the truck, testified as follows: "Q. At the time of this accident, whom were you working for? A. Why, the Eastern Asphalt Company."

And again: "Q. Whom did you say was your boss? A. Pasquale Capanna. Q. You took orders from him, didn't you? A. No, I didn't take orders from him; I was just told to report; he would tell me to report to the

yard— Q. Then the people at the yard where you reported would tell you where to go? A. They would give the orders. Q. Is that right? A. That's right."

And again: "Q. How long had you been hauling asphalt for the Eastern Asphalt Company? A. I'd say about a couple of years."

And again: "Q. During the month of August, 1941, did you receive any orders or instructions from your brother Pat with reference to the work you were to do, or hauling? A. No, sir."

And again: "Q. Your brother would tell you to take the truck and go to the Eastern Asphalt Company, is that correct? A. That's the only order I got. Q. That is the only order you got from your brother? A. That is correct. Q. He told you more than that, didn't he? Didn't he tell you to take your truck and go to the Eastern Asphalt Company and do whatever Barringer told you to do in the way of hauling? A. Report to the yard. Q. To report there—not just report, but to report and do whatever the yard superintendent said in the way of hauling; go to the places he told you to go; is that right? A. That's right."

And again: "Q. Apart from the question that his Honor asked as to what your brother told you to do, you received no other orders from your brother while hauling from the Eastern Asphalt? A. No, sir."

Pasquale Capanna, the alleged owner of the truck, testified as follows: "Q. Mr. Capanna, did you give Philip Capanna, the driver of this truck, any instructions on that day as to where to go, what to do, or what to haul? A. No, I didn't."

And again: "Did you have any authority or right to give your brother Philip Capanna any orders as to the driving of this truck when he reported to the job? A. No, I didn't. Q. Your answer is no? A. No."

And again: "Q. Did you tell your brother, Philip, that he should follow out the instructions of Mr. Barringer? A. Yes, because he was to do whatever Mr. Bar-

ringer said, because, after all, he was Philip's boss." (The latter part of this answer was stricken out by the court, —I think improperly.)

And again: "Q. At any rate, the next morning, if you know, did Phil Capanna report for work at the Eastern Asphalt? A. Yes. Q. And did you give him any instructions on that day what to do? A. No, I didn't."

These excerpts from the testimony all tend to show that after Philip Capanna reported at the yard of Eastern Asphalt Company he was under the control, and subject to the orders, of its superintendent, Mr. Barringer. Pasquale Capanna so states, and that he did not give, and had no authority or right to give, any instructions whatever in regard to the operation of the truck. In view of the testimony quoted I do not see how the court can take the issue from the jury and itself determine what is purely a question of fact. I therefore dissent from the affirmance of the judgment of non-suit as to Eastern Asphalt Company.