Johnson, Admr., et al., Appellants, *v.* Angretti
(et al., Appellant).

Argued April 17, 1950. Before DREW, C. J., STERN, STEARNE and BELL, JJ.

*John D. Ray*, with him *Reed, Ewing & Ray,* for plaintiffs, appellants.

*J. Quint Salmon*, with him *Wilson & Salmon,* for defendant, Stewart Hull, appellant, appellee.

*Wayne G. Luce,* for defendant transit company, appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1950:

On a September morning—the weather clear and the road dry—Jerome Johnson was driving a tractor and trailer on behalf of Brown Brothers, who owned the vehicles, in a westerly direction along the northerly side of a State highway from Beaver toward Midland. A bus of the Valley Motor Transit Company was being operated on the southerly side of the same highway from west to east, followed at a short distance by a truck driven by one Osterling and it in turn by a truck driven by one Angretti. The bus stopped momentarily to take on a passenger; Osterling, behind it, likewise stopped; Angretti claims that he also attempted to stop, but for some reason (he says that when he put on his brakes he pulled—or "it pulled" him—"a little bit" to the left) he came over to the north side of the highway directly into the path of the westbound truck-trailer which had then already passed the standing bus. The two vehicles collided and Johnson was killed. The administrator of his estate brought an action for damages under the Wrongful Death and the Survival Statutes against Angretti and against Stanley Hull individually and trading as Hull Resurfacing Company, the alleged em-

ployer of Angretti;* Brown Brothers also brought an action against the same defendants to recover for the damage to their tractor-trailer; in both actions Hull brought Valley Motor Transit Company on the record as an additional defendant. The jury found verdicts aggregating $18,000 in favor of the administrator of Jerome Johnson's estate, and a verdict of $5,000 in favor of Brown Brothers, all the verdicts being against Angretti, Hull, and Valley Motor Transit Company. The court granted motions of Hull and Valley Motor Transit Company for judgments n. o. v., and plaintiffs now appeal from that action of the court.

Plaintiffs seek to fasten liability upon Valley Motor Transit Company because of alleged violations by the operator of its bus of sections 1012(a) and 1019 of The Vehicle Code of May 1, 1929, P. L. 905, as amended. Section 1012(a) provides that the driver of any vehicle on a highway, before starting, stopping or turning from a direct line, shall first see that such movement can be made in safety, and whenever the operation of any other vehicle approaching or following may be affected by such movement shall give a signal of his intention plainly visible to the driver of such other vehicle. Plaintiffs cannot rely upon this section as a basis for imputing negligence to the operator of the bus for the uncontradicted testimony is that the bus came to a very gradual stop and the flashing stop lights on its rear furnished an adequate signal to the vehicle that was following, so that Osterling, seeing the lights, had no difficulty in bringing his truck to a stop at a safe distance behind

---

* Originally one Robert Sechan was also named as a defendant, but a compulsory nonsuit was granted in his favor and he disappeared from the proceedings at that point. Originally also Stewart Hull and Stanley Hull were named as co-partners trading as Hull Resurfacing Company but subsequently the name of Stewart Hull was removed from the record as a party defendant and the action proceeded as if it had been brought against Stanley Hull individually and trading as Hull Resurfacing Company.

the bus. As to section 1019 of the Code, which provides that no vehicle shall be parked or left standing upon any highway unless a clear and unobstructed width of not less than fifteen feet upon the main traveled portion of the highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, plaintiffs' contention is that this provision was violated because, when the bus stopped, its right-hand wheels went only about 2 to 2½ feet off the concrete, and, as the bus was 8 feet in width and the highway 18 feet, this left but 12 or 12½ feet of the paved portion of the road clear for traffic in both directions. The fact is, however, that, while the gravel berm had an *average* width of 10 feet, its width at the place where the bus stopped, which was a regular marked bus stop, was only 3½ feet, the highway there being bordered at that distance by a hedge fence. Apart from the fact that apparently, therefore, it would have been physically impossible for the bus to have gone any further off the concrete the decisions are numerous to the effect that section 1019 of the Code was not intended to prohibit the momentary stopping of a vehicle or a temporary obstruction of the highway if for a proper purpose and under proper circumstances: *Henry v. S. Liebovitz & Sons, Inc.*, 312 Pa. 397, 401, 167 A. 304, 305, 306; *Stuckwish v. Hagan Corporation*, 316 Pa. 513, 517, 175 A. 381, 383; *Struppler v. Rexford*, 326 Pa. 545, 548, 549, 192 A. 886, 888; *Fritz, Administratrix, v. York Motor Express Co.*, 358 Pa. 398, 401, 402, 58 A. 2d 12, 13. Moreover it is clear that such alleged violation bore no causal relation whatever to the happening of the accident which was due entirely to the intervening and superseding negligence of Angretti in allowing his truck to pass over into the pathway of the westbound tractor-trailer instead of bringing his vehicle to a stop as Osterling had done and as he admitted he could readily have done without colliding with the truck ahead of him. The situation

created by the stopping of the bus was merely a circumstance of the accident and not its proximate cause: *Hoffman v. McKeesport*, 303 Pa. 548, 154 A. 925; *Schwartz v. Jaffe*, 324 Pa. 324, 332, 188 A. 295, 298; *Kline v. Moyer & Albert*, 325 Pa. 357, 191 A. 43; *Dooley v. Charleroi Borough*, 328 Pa. 57, 195 A. 6; *Ashworth v. Hannum*, 347 Pa. 393, 397, 398, 32 A. 2d 407, 409; *Venorick v. Revetta*, 152 Pa. Superior Ct. 455, 457, 458, 33 A. 2d 655, 656.

We pass to the question of the liability of the Hull Resurfacing Company, and that depends entirely upon whether, in operating his truck at the time of the accident, Angretti was acting as an independent contractor or as Hull's employe. Where such an issue arises it is usually determinable by the jury upon consideration of all the evidence, but where the facts are not in dispute and the evidence presents no question of credibility and leaves no sufficient ground for inconsistent inferences of fact it becomes the function of the court to determine the precise nature of the relationship: *Joseph v. United Workers Association*, 343 Pa. 636, 639, 23 A. 2d 470, 472, 473; *Thomas v. Bache*, 351 Pa. 220, 237, 40 A. 2d 495, 503; *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 486, 70 A. 2d 299, 300, 301.

The test for the determination of the problem whether one is an employe or an independent contractor has been so frequently expounded as scarcely to require repetition. The characteristic of the employe relationship is that the master not only controls the result of the work but has the right to direct the way in which it shall be done, whereas the characteristic of the independent contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result: *Feller v. New Amsterdam Casualty Co.*, 363 Pa. 483, 486, 70 A. 2d 299, 300. Some of the matters helpful in determining whether one acting for another

is a servant or an independent contractor are the terms of the agreement between the parties, the nature of the work or occupation, the skill required in its performance, whether or not the one employed is engaged in a distinct occupation or business, whether the employer or the workman supplies the tools and instrumentalities, whether payment is by the time or by the job, and whether or not the work is a part of the regular business of the employer: Rest. Agency, §220(2).

All of these factors, when applied in the present case, point to the inevitable conclusion that Angretti was an independent contractor and not Hull's employe. Originally he was a truck driver but some time previously he had purchased a dump truck of his own and thereafter was engaged in the business of hauling materials of the type usually transported in such trucks; he hauled for any one who engaged his services, not limiting his business to any one customer; while engaged in the work for Hull he was entirely free to take on hauling jobs for others; he bought and paid for his own oil and gasoline and for all the expenses of operation and repairs of his truck. Hull was in the business of constructing, improving and repairing roads; Angretti was in the totally separate and independent business of hauling. There is nothing in the testimony to suggest that Hull had any right to direct the speed, route, operation or management of Angretti's truck in the performance of the work in which it was engaged; on the contrary, it was under Angretti's exclusive care, supervision and control. Ordinarily, draymen, truckmen, carters, etc., are regarded as independent contractors: *Tyler v. Mac-Fadden Newspapers Corporation*, 107 Pa. Superior Ct. 166, 172, 163 A. 79, 81. The general rule is that the driver of a truck engaged to do hauling is an independent contractor if it appears that he owned the truck which he himself drove and kept within his own control, storing it where he desired, paying all expenses incident to its

operation including the cost of oil and gasoline, that he was paid at a fixed rate for each part or unit of the job performed, and that he was not subject to orders of the employer except as to the place of loading and unloading: *Thatcher v. Pierce,* 281 Pa. 16, 125 A. 302; *Funston v. Ingenito,* 282 Pa. 124, 127 A. 470; *Long v. Eastern Paving Co.,* 295 Pa. 163, 145 A. 71; *Matlack v. Chalfant,* 69 Pa. Superior Ct. 49; *Wright v. A. & S. Wilson Co.,* 83 Pa. Superior Ct. 487. Under such circumstances the burden of proof to show that the principle of respondeat superior applies is upon the one who claims that the truck driver was the servant of the person whose goods were being transported: *Blakey, Administratrix, v. Capanna,* 349 Pa. 144, 147, 36 A. 2d 789, 790; *DiGregorio, Administrator, v. Berg,* 359 Pa. 376, 379, 59 A. 2d 80, 81. Nor does the fact that the person who has engaged the services of the trucker points out to him the work to be done, the material to be hauled, the place from which and the place to which it is to be hauled and where it is to be dumped, affect in any way the status of the trucker as an independent contractor: *Blakey, Administratrix, v. Capanna,* 349 Pa. 144, 148, 36 A. 2d 789, 791; *Pennsylvania Smelting & Refining Co. v. Duffin,* 363 Pa. 564, 568, 569, 70 A. 2d 270, 272; *Wright v. A. & S. Wilson Co.,* 83 Pa. Superior Ct. 487; *Tyler v. MacFadden Newspapers Corporation,* 107 Pa. Superior Ct. 166, 173, 163 A. 79, 81.

The only semblance of testimony upon which plaintiffs in this case rely for establishing proof of an employer and employe relationship between Hull and Angretti consists of a certain conversation between Angretti and Hull's foreman on the job where the road was being constructed. It appears that Hull had engaged one Sechan to haul the slag needed for the road building and which was obtained from places some distance from the site of the operation; Sechan in turn

had engaged Angretti to work with his truck in hauling the slag; there were other trucks similarly employed; Sechan was paid by Hull $1.75 per ton of material hauled and Sechan paid Angretti $1.65 per ton. Hull's arrangement with Sechan was carried on for several weeks until Hull terminated it. When Sechan was no longer on the job, Angretti, apparently concerned as to his status, called at the office maintained on the job by Hull and had a conversation with the foreman and the timekeeper; the latter asked him: "Who are you working for?" to which Angretti answered: "As far as I know, I am working for Robert Sechan." The timekeeper said to the foreman: "Here is a fellow don't know who he is working for, Sechan or us." Whereupon the foreman said: "He is working for us." The timekeeper said, "That is all I want." It is the remark: "He is working for us" which forms the basis of plaintiff's claim that Angretti was an employe of Hull and not an independent contractor. In view, however, of all the facts previously recited as to the relationship between the parties, that statement of the foreman—even assuming that he had authority to make it—does not have the significance which plaintiffs would attribute to it; it was evidently intended to inform the timekeeper that thereafter Angretti was to receive the payments previously made to Sechan, but it throws no light at all on the question whether Angretti was "working for us" as an independent contractor or as an employe. After giving due weight to all the testimony and conceding to plaintiffs the benefit of all inferences reasonably deducible from it the court properly concluded that they had not, as a matter of law, sustained their burden of proving that Hull was Angretti's employer and therefore responsible for the damage caused by the negligent operation of his truck.

Judgments affirmed.