## Commonwealth *v.* Root, Appellant.

Argued September 26, 1960.   Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Franklin L. Gordon,* with him *Gordon & Gordon,* for appellant.

*Alfred Delduco,* Assistant District Attorney, with him *Samuel J. Halpren,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, May 2, 1961:

The appellant was found guilty of involuntary manslaughter for the death of his competitor in the course of an automobile race between them on a highway. The trial court overruled the defendant's demurrer to the Commonwealth's evidence and, after verdict, denied his motion in arrest of judgment. On appeal from the judgment of sentence entered on the jury's verdict, the Superior Court affirmed. We granted allocatur because of the important question present as to whether the defendant's unlawful and reckless conduct was a sufficiently direct cause of the death to warrant his being charged with criminal homicide.

The testimony, which is uncontradicted in material part, discloses that, on the night of the fatal accident, the defendant accepted the deceased's challenge to engage in an automobile race; that the racing took place on a rural 3-lane highway; that the night was clear and dry, and traffic light; that the speed limit on the highway was 50 miles per hour; that, immediately prior to the accident, the two automobiles were being operated at varying speeds of from 70 to 90 miles per hour; that the accident occurred in a no-passing zone on the approach to a bridge where the highway narrowed to two directionally-opposite lanes; that, at the time of the accident, the defendant was in the lead and was proceeding in his right-hand lane of travel; that the deceased, in an attempt to pass the defendant's automobile, when a truck was closely approaching from the opposite direction, swerved his car to the left, crossed the highway's white dividing line and drove his automobile on the wrong side of the highway head-on into the oncoming truck with resultant fatal effect to himself.

This evidence would of course amply support a conviction of the defendant for speeding, reckless driving

and, perhaps, other violations of The Vehicle Code of May 1, 1929, P. L. 905, as amended. In fact, it may be noted, in passing, that the Act of January 8, 1960, P. L. (1959) 2118, §3, 75 PS §1041, amending The Vehicle Code of April 29, 1959, P. L. 58, 75 PS §101 et seq., makes automobile racing on a highway an independent crime punishable by fine or imprisonment or both up to $500 and three years in jail. As the highway racing in the instant case occurred prior to the enactment of the Act of 1960, cit. supra, that statute is, of course, not presently applicable. In any event, unlawful or reckless conduct is only one ingredient of the crime of involuntary manslaughter. Another essential and distinctly separate element of the crime is that the unlawful or reckless conduct charged to the defendant was the *direct* cause of the death in issue. The first ingredient is obviously present in this case but, just as plainly, the second is not.

While precedent is to be found for application of the tort law concept of "proximate cause" in fixing responsibility for criminal homicide, the want of any rational basis for its use in determining criminal liability can no longer be properly disregarded. When proximate cause was first borrowed from the field of tort law and applied to homicide prosecutions in Pennsylvania, the concept connoted a much more direct causal relation in producing the alleged culpable result than it does today. Proximate cause, as an essential element of a tort founded in negligence, has undergone in recent times, and is still undergoing, a marked extension. More specifically, this area of civil law has been progressively liberalized in favor of claims for damages for personal injuries to which careless conduct of others can in some way be associated. To persist in applying the tort liability concept of proximate cause to prosecutions for criminal homicide after the marked expansion of *civil* liability of defendants in tort actions

for negligence would be to extend possible *criminal* liability to persons chargeable with unlawful or reckless conduct in circumstances not generally considered to present the likelihood of a resultant death.

In this very case (*Commonwealth v. Root*, 191 Pa. Superior Ct. 238, 245, 156 A. 2d 895) the Superior Court mistakenly opined that "The concept of proximate cause as applied in tort cases is applicable to similar problems of causation in criminal cases. Commonwealth v. Almeida, 362 Pa. 596, 603, 611, 68 A. 2d 595 (1949)." It is indeed strange that the *Almeida* case should have been cited as authority for the above quoted statement; the rationale of the *Almeida* case was flatly rejected by this Court in *Commonwealth v. Redline*, 391 Pa. 486, 504-505, 137 A. 2d 472 (1958), where we held that the tort liability concept of proximate cause is not a proper criterion of causation in a criminal homicide case. True enough, *Commonwealth v. Redline* was a murder case, but the distinction between murder and involuntary manslaughter does not rest upon a differentiation in causation; it lies in the state of mind of the offender. If one kills with malice aforethought, he is chargeable with murder; and if death, though unintentional, results directly from his unlawful or reckless conduct, he is chargeable with involuntary manslaughter. In either event, the accused is not guilty unless his conduct was a cause of death sufficiently direct as to meet the requirements of the *criminal*, and not the *tort*, law.

The instant case is one of first impression in this State; and our research has not disclosed a single instance where a district attorney has ever before attempted to prosecute for involuntary manslaughter on facts similar to those established by the record now before us. The closest case, factually, would seem to be *Commonwealth v. Levin*, 184 Pa. Superior Ct. 436, 135 A. 2d 764 (1957), which affirmed the defendant's

conviction of involuntary manslaughter. In the *Levin* case two cars were racing on the streets of Philadelphia at speeds estimated at from 85 to 95 miles per hour. The defendant's car, in the left-hand lane, was racing alongside of the car in which the deceased was a passenger when the defendant turned his automobile sharply to the right in front of the other car, thereby causing the driver of the latter car to lose control and smash into a tree, the passenger being thrown to the road and killed as a result of the impact. It is readily apparent that the elements of causation in the *Levin* case were fundamentally different from those in the present case. Levin's act of cutting his automobile sharply in front of the car in which the deceased was riding directly forced that car off of the road and into the tree. The defendant's reckless and unlawful maneuver was the direct cause of the crucial fatality. In the instant case, the defendant's conduct was not even remotely comparable. Here, the action of the deceased driver in recklessly and suicidally swerving his car to the left lane of a 2-lane highway into the path of an oncoming truck was not forced upon him by any act of the defendant; it was done by the deceased and by him alone, who thus directly brought about his own demise. The *Levin* case was properly decided but it cannot, by any ratiocination, be utilized to justify a conviction in the present case.

Legal theory which makes guilt or innocence of criminal homicide depend upon such accidental and fortuitous circumstances as are now embraced by modern tort law's encompassing concept of proximate cause is too harsh to be just. A few illustrations should suffice to so demonstrate.

In *Mautino v. Piercedale Supply Co.*, 338 Pa. 435, 13 A. 2d 51 (1940),—a civil action for damages—we held that where a man sold a cartridge to a person under 16 years of age in violation of a State statute and

the recipient subsequently procured a gun from which he fired the cartridge injuring someone, the injury was proximately caused by the act of the man who sold the cartridge to the underage person. If proximate cause were the test for criminal liability and the injury to the plaintiff in the *Mautino* case had been fatal, the man who sold the bullet to the underage person (even though the boy had the appearance of an adult) would have been guilty of involuntary manslaughter, for his unlawful act would, according to the tort law standard, have been the proximate cause of the death.

In *Schelin v. Goldberg,* 188 Pa. Superior Ct. 341, 146 A. 2d 648 (1958), it was held that the plaintiff, who was injured in a fight, could recover in tort against the defendants, the owners of a taproom who prior to the fight had unlawfully served the plaintiff drinks while he was in a visibly intoxicated condition, the unlawful action of the defendants being held to be the proximate cause of the plaintiff's injuries. Here, again, if proximate cause were the test for criminal liability and the plaintiff had been fatally injured in the fight, the taproom owners would have been guilty of involuntary manslaughter, for their unlawful act would have been no less the proximate cause of death.

In *Marchl v. Dowling & Company,* 157 Pa. Superior Ct. 91, 41 A. 2d 427 (1945), it was held that where a truck driver had double parked his truck and the minor plaintiff was struck by a passing car when she walked around the double parked truck, the truck driver's employer was held liable in tort for the plaintiff's injuries on the ground that the truck driver's act of double parking, which violated both a State statute and a city ordinance, was the proximate cause of the plaintiff's injuries. Here, also, if proximate cause were the test for criminal liability and the plaintiff's injuries had been fatal, the truck driver would have been guilty of involuntary manslaughter since his unlawful act

would have been the proximate cause of the death for which his employer was held liable in damages under respondeat superior. To be guilty of involuntary manslaughter for double parking would, of course, be unthinkable, yet if proximate cause were to determine criminal liability, such a result would indeed be a possibility.

Even if the tort liability concept of proximate cause were to be deemed applicable, the defendant's conviction of involuntary manslaughter in the instant case could not be sustained under the evidence. The operative effect of a supervening cause would have to be taken into consideration: *Commonwealth v. Redline,* supra, at p. 505. But, the trial judge refused the defendant's point for charge to such effect and erroneously instructed the jury that "negligence or want of care on the part of . . . [the deceased] is no defense to the criminal responsibility of the defendant . . . ."

The Superior Court, in affirming the defendant's conviction in this case, approved the charge above mentioned, despite a number of decisions in involuntary manslaughter cases holding that the conduct of the deceased victim must be considered in order to determine whether the defendant's reckless acts were the proximate (i.e., sufficiently direct) cause of his death. See *Commonwealth v. Amecca,* 160 Pa. Superior Ct. 257, 260-263, 50 A. 2d 725 (1947); *Commonwealth v. Hatch,* 149 Pa. Superior Ct. 289, 292, 27 A. 2d 742 (1942); *Commonwealth v. Aurick,* 138 Pa. Superior Ct. 180, 187, 10 A. 2d 22 (1939). The Superior Court dispensed with this decisional authority (see *Commonwealth v. Root,* supra, at p. 252) by expressly overruling *Commonwealth v. Amecca,* supra, and by impliedly overruling each of the other cases immediately above cited. It did so on the ground that there can be more than one proximate cause of death. The point is wholly irrelevant. Of course there can be more than one proxi-

mate cause of death just as there can also be more than one *direct* cause of death. For example, in the so-called "shield" cases where a felon interposes the person of an innocent victim between himself and a pursuing officer, if the officer should fire his gun at the felon to prevent his escape and fatally wound the person used as a shield, the different acts of the policeman and the felon would each be a direct cause of the victim's death.

If the tort liability concept of proximate cause were to be applied in a criminal homicide prosecution, then the conduct of the person whose death is the basis of the indictment would have to be considered, not to prove that it was merely an *additional* proximate cause of the death, but to determine, under fundamental and long recognized law applicable to proximate cause, whether the subsequent wrongful act *superseded* the original conduct chargeable to the defendant. If it did in fact supervene, then the original act is so insulated from the ensuing death as not to be its proximate cause.

Under the uncontradicted evidence in this case, the conduct of the defendant was not the proximate cause of the decedent's death as a matter of law. In *Kline v. Moyer and Albert,* 325 Pa. 357, 364, 191 Atl. 43 (1937), the rule is stated as follows: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by him was merely a circumstance of the accident and not its proximate cause." See, in accord, *DeLuca v. Manchester Laundry and Dry Cleaning Company, Inc.,* 380 Pa. 484, 491, 112 A. 2d 372 (1955) ; *Jeloszewski v. Sloan,* 375 Pa. 360, 365, 100 A. 2d 480 (1953) ; *John-*

*son v. Angretti,* 364 Pa. 602, 606-607, 73 A. 2d 666 (1950).

In the case last above cited, while Angretti was driving his truck eastward along a highway, a bus, traveling in the same direction in front of him, stopped to take on a passenger. Angretti swerved his truck to the left into the lane of oncoming traffic in an attempt to pass the bus but collided with a tractor-trailer driven by the plaintiff's decedent, who was killed as a result of the collision. In affirming the entry of judgment n.o.v. in favor of the defendant bus company, we held that any negligence on the part of the bus driver, in suddenly bringing his bus to a halt in order to pick up a passenger, was not a proximate cause of the death of the plaintiff's decedent since the accident "was due entirely to the intervening and superseding negligence of Angretti in allowing his truck to pass over into the pathway of the westbound tractor-trailer . . . ."

In the case now before us, the deceased was aware of the dangerous condition created by the defendant's reckless conduct in driving his automobile at an excessive rate of speed along the highway but, despite such knowledge, he recklessly chose to swerve his car to the left and into the path of an oncoming truck, thereby bringing about the head-on collision which caused his own death.

To summarize, the tort liability concept of proximate cause has no proper place in prosecutions for criminal homicide and more direct causal connection is required for conviction: *Commonwealth v. Redline,* supra, at pp. 504-505. In the instant case, the defendant's reckless conduct was not a sufficiently direct cause of the competing driver's death to make him criminally liable therefor.

The judgment of sentence is reversed and the defendant's motion in arrest of judgment granted.

Concurring Opinion by Mr. Justice Bell:

I concur in the result reached by the majority opinion. I also agree that in recent years the doctrine of tort liability in civil cases has been extended and stretched to such an extent that it should no longer be applied in criminal cases. This is especially necessary because the tests for involuntary manslaughter, particularly in cases arising out of automobile accidents, have been different and varying in the Superior Court and in the lower Courts, with no clear standard. This was due to an attempt by these Courts to apply a proper test to the different circumstances of each particular case. For example the following tests have been applied by the Superior Court: Rash or reckless conduct; proximate cause; legal cause; substantial factor; natural and probable consequence such as should have been foreseen; efficient cause; concurring cause; must be more than remote cause—substantial factor; natural result or probable consequence.

It is one of the most important duties of an appellate Court to erect Legal Signposts with language inscribed thereon so clearly, well and wisely that they who read may easily understand.

The classic definition which has come down to us through Blackstone is set forth in *Commonwealth v. Comber*, 374 Pa. 570, 581, 97 A. 2d 343: "In Com. v. Aurick, 342 Pa. 282, 288, 19 A. 2d 920, the Court thus defined involuntary manslaughter: 'In Com. v. Mayberry, 290 Pa. 195, 138 A. 686, this Court . . . said: "Involuntary manslaughter consists in 'the killing of another without malice and unintentionally, but [1] in doing some unlawful act not amounting to a felony nor naturally tending to cause death or great bodily harm, or [2] in negligently doing some act lawful in itself, or [3] by the negligent omission to perform a legal duty': 29 C. J., page 1148." ' Accord: Com. v. McLaughlin, 293 Pa. 218, 223, 142 A. 213; Com. v. Micuso,

273 Pa. 474, 117 A. 211; Com. v. Gable, 7 S. & R. 423; Wharton on Homicide (3rd ed.) sec. 211; 13 R.C.L., 784."

I believe that the test of negligence as extended and defined in recent opinions of this Court in trespass cases should no longer be applicable to involuntary manslaughter, and that a new definition of involuntary manslaughter which will retain all the basic requirements of the crime and at the same time meet the changes which have occurred, is imperative.

What is involuntary manslaughter? Involuntary manslaughter is a misdemeanor and is very different from murder and from voluntary manslaughter. The prime difference between murder, voluntary manslaughter, and involuntary manslaughter may be thus summarized: Murder is an unlawful killing of another person with malice* aforethought, expressed or implied: *Commonwealth v. Nelson,* 396 Pa. 359, 152 A. 2d 913; *Commonwealth v. Buzard,* 365 Pa. 511, 76 A. 2d 394; *Commonwealth v. Bolish,* 381 Pa. 500, 113 A. 2d 464.

Voluntary manslaughter is the intentional killing of another person which is committed under the influence of passion:* *Commonwealth v. Nelson,* 396 Pa., supra; *Commonwealth v. Donough,* 377 Pa. 46, 103 A. 2d 694; *Commonwealth v. Palermo,* 368 Pa. 28, 81 A. 2d 540.

Involuntary manslaughter is an unintentional and nonfelonious** killing of another person without malice or passion,* which results from conduct by defendant which is so unlawful as to be outrageous, provided such conduct is a direct cause of the killing.

---

* Malice, like passion, is used in its technical legal sense.

** Cf. *Commonwealth v. Dorazio,* 365 Pa. 291, 74 A. 2d 125.

The unlawful racing by this defendant was not only unlawful, it was outrageous,* but it was not a direct cause, i.e., one of the direct causes, of the killing.

---

Dissenting Opinion by Mr. Justice Eagen:

The opinion of the learned Chief Justice admits, under the uncontradicted facts, that the defendant, at the time of the fatal accident involved, was engaged in an unlawful and reckless course of conduct. Racing an automobile at 90 miles per hour, trying to prevent another automobile going in the same direction from passing him, in a no-passing zone on a two-lane public highway, is certainly all of that. Admittedly also, there can be more than one direct cause of an unlawful death. To me, this is self-evident. But, says the majority opinion, the defendant's recklessness was not a direct cause of the death. With this, I cannot agree.

If the defendant did not engage in the unlawful race and so operate his automobile in such a reckless manner, this accident would never have occurred. He helped create the dangerous event. He was a vital part of it. The victim's acts were a natural reaction to the stimulus of the situation. The race, the attempt to pass the other car and forge ahead, the reckless speed, all of these factors the defendant himself helped create. He was part and parcel of them. That the victim's response was normal under the circumstances, that his reaction should have been expected and was clearly foreseeable, is to me beyond argument. That the defendant's recklessness was a substantial factor is obvious. All of this, in my opinion, makes his unlawful conduct a direct cause of the resulting collision.

The cases cited in support of the majority opinion are not in point. For instance, in *Johnson v. Angretti,*

---

* For this reprehensible conduct defendant can and should be punished.

364 Pa. 602, 73 A. 2d 666 (1950), this Court, in affirming the trial court, found that the bus driver *was not guilty of any negligence or violation of The Vehicle Code*[1] in bringing the bus to a stop. The Court, as dicta, then went on to say, at p. 606, "Moreover it is clear that such alleged violation bore no causal relation whatever to the happening of the accident which was due entirely to the intervening and superseding negligence of Angretti in allowing his truck to pass over into the pathway of the westbound tractor-trailer instead of bringing his vehicle to a stop as Osterling [the driver of the truck directly behind the bus and in front of Angretti] had done and *as he admitted he could readily have done without colliding with the truck ahead of him.* The situation created by the stopping of the bus was merely a circumstance of the accident and not its proximate cause: (citing cases)." It is readily apparent that the instant case and the *Angretti* case are distinguishable in all the important factors. In the present case there was, (1) recklessness and a violation of The Vehicle Code; (2) a joint venture or common enterprise of racing; (3) no proof that Hall could have guided his car back into the right-hand lane behind Root after he became aware of the danger of the oncoming truck.

Nor does the case of *Kline v. Moyer and Albert,* 325 Pa. 357, 191 Atl. 43 (1937), lend support. Quite to the contrary, both the facts and the law oppose it. The majority omits the pertinent part of the rule cited, at p. 364, the whole of which is as follows: "Where a second actor has become aware of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter, by an independent act of negligence, brings about an accident, the first tort-feasor is relieved of liability, because the condition created by

---

[1] Emphasis throughout, ours.

him was merely a circumstance of the accident and not its proximate cause. *Where, however, the second actor does not become apprised of such danger until his own negligence, added to that of the existing perilous condition, has made the accident inevitable, the negligent acts of the two tort-feasors are contributing causes and proximate factors in the happening of the accident and impose liability upon both of the guilty parties.*" The *Kline* case involved a truck, operated by Albert, which he abandoned on a highway without any lights to warn approaching motorists of the danger. Moyer drove down the highway and upon seeing the truck, failed to reduce his speed and went into the lane of oncoming traffic and crashed into Kline. This Court said, at p. 363, "It is clear that when an unlighted parked truck is seen by the operator of an approaching vehicle, the fact of its being unlighted becomes *thereafter*[2] of legal inconsequence, because the purpose of a light as warning has been otherwise accomplished. *If already at that time, by the negligence of its driver, the moving vehicle is in such a position and under such impetus that an accident cannot be avoided, the negligence of the truck owner is as much a proximate cause of the accident as is the negligence of the driver of the car; the negligence of each has contributed to the result.* But if, after seeing the unlighted truck, although he would still have been able to guide his car without accident, the driver proceeds in such negligent manner that an accident results, the original negligence of the truck owner has become a noncausal factor divested of legal significance; as to it the chain of causation is broken, and responsibility remains solely with the operator of the moving car." Because the evidence was not undisputed that Moyer became aware of the presence of the abandoned truck on the highway in time to

---

[2] Original emphasis.

stop, we stated that the question of causal connection was for the jury and not for the court as a matter of law. In the present case, there wasn't any evidence that Hall saw the oncoming truck when he pulled out to pass Root. This would have been suicide, against which there is a presumption. 14 P.L.E. §21. The act of passing was not an "extraordinary negligent" act, but rather a "normal response" to the act of "racing."[3] Furthermore, as Hall pulled out to pass, Root "dropped off" his speed to 90 miles an hour. Such a move probably prevented Hall from getting back into the right-hand lane since he was alongside of Root at the time and to brake the car at that speed would have been fatal to both himself and Root. Moreover, the dangerous condition of which the deceased had to become aware of before the defendant was relieved of his direct causal connection with the ensuing accident, was not the fact that the defendant was driving at an excessive rate of speed along the highway. He knew that when the race began many miles and minutes earlier. *The dangerous condition necessary was an awareness of the oncoming truck and the fact that at the rate of speed Root was traveling he couldn't safely pass him.* This important fact was not shown and, therefore, was a question for the fact-finders and not a question that could be decided as a matter of law.

The majority opinion states, "Legal theory which makes guilt or innocence of criminal homicide depend upon such *accidental and fortuitous circumstances* as are now embraced by modern tort law's encompassing concept is . . . too harsh to be just." If the resulting death had been dependent upon "accidental and fortuitous circumstances" or, as the majority also say, "in circumstances not generally considered to present the likelihood of a resultant death," we would agree that

---

[3] See: *Kline v. Moyer and Albert,* supra, at 364, footnote*.

the defendant is not criminally responsible. However, acts should be judged by their tendency under the known circumstances, not by the actual intent which accompanies their performance. Every day of the year, we read that some teen-agers, or young adults, somewhere in this country, have been killed or have killed others, while racing their automobiles. Hair-raising, death-defying, lawbreaking rides, which encompass "racing" are the rule rather than the exception, and endanger not only the participants, but also every motorist and passenger on the road. To call such resulting accidents "accidental and fortuitous," or unlikely to result in death, is to ignore the cold and harsh reality of everyday occurrences. Root's actions were as direct a cause of Hall's death as those in the "shield" cases. Root's shield was his high speed and any approaching traffic in his quest to prevent Hall from passing, which he knew Hall would undertake to do, the first time he thought he had the least opportunity.

1 Wharton, Criminal Law and Procedure, §68 (1957), speaking of causal connections, says: "A person is only criminally liable for what he has caused, that is, there must be a causal relationship between his act and the harm sustained for which he is prosecuted. It is not essential to the existence of a causal relationship that the ultimate harm which has resulted was foreseen or intended by the actor. It is sufficient that the ultimate harm is one which a reasonable man would foresee as being reasonably related to the acts of the defendant." Section 295, in speaking about manslaughter, says: "When homicide is predicated upon the negligence of the defendant, it must be shown that his negligence was the proximate cause or a contributing cause of the victim's death. It must appear that the death was not the result of misadventure, but the natural and probable result of a reckless or culpably negligent act. To render a person criminally liable for neg-

ligent homicide, the duty omitted or improperly performed must have been his personal duty, and the negligent act from which death resulted must have been his personal act, and not the act of another. But he is not excused because the negligence of someone else contributed to the result, when his act was the primary or proximate cause and the negligence of the other did not intervene between his act and the result."

Professor Joseph Beale, late renowned member of the Harvard Law School faculty, in an article entitled, The Proximate Consequences of an Act, 33 Harv. L. Rev. 633, 646, said, "Though there is an active force intervening after defendant's act, the result will nevertheless be proximate if the defendant's act actively caused the intervening force. In such a case the defendant's force is really continuing in active operation *by means of the force it stimulated into activity.*" Professor Beale, at 658, sums up the requirements of proximity of result in this manner: "1. The defendant must have acted (or failed to act in violation of a duty). 2. The force thus created must (a) have remained active itself or created another *force* which remained active until it directly caused the result; or (b) have created a new active *risk* of being acted upon by the active force that caused the result." 2 Bishop, New Criminal Law §424 (1913), says: "He whose act causes in any way, directly or indirectly, the death of another, kills him, within the meaning of felonious homicide. It is a rule of both reason and the law that whenever one's will contributes to impel a physical force, whether another's, his own, or a combined force, proceeding from whatever different sources, he is responsible for the result, the same as though his hand, unaided, had produced it."

But, says the majority opinion, these are principles of tort law and should not in these days be applied to the criminal law. But such has been the case since the

time of Blackstone. These same principles have always been germane to both crimes and tort. See, Beale, Recovery for Consequences of an Act, 9 Harv. L. Rev. 80; Green, Rationale of Proximate Cause, 132-133 (1927); Frederick C. Moesel, Jr., A Survey of Felony Murder, 28 Temp. L. Q. 453, 459-466. They have been repeatedly so applied throughout the years and were employed in a criminal case in Pennsylvania as long as one hundred and seventeen years ago. See, *Commonwealth v. Hare*, 2 Clark 467 (1844). In that case, two separate bands of men were fighting each other with firearms in a public street and, as a result, an innocent citizen was shot and killed. The person firing the fatal shot could not be ascertained. Hare, one of the rioters, was convicted of homicide and the judgment was affirmed. Can anyone question the logic or correctness of this decision? Under the rationale of the majority opinion, what would be the result in the Hare case? Certainly, under its reasoning, if the truck driver met death under the circumstances the case at hand presents, the defendant would not be legally responsible. Again with this conclusion, I cannot agree.

While the victim's foolhardiness in this case contributed to his own death, he was not the only one responsible and it is not he alone with whom we are concerned. It is the people of the Commonwealth who are harmed by the kind of conduct the defendant pursued. Their interests must be kept in mind.

I, therefore, dissent and would accordingly affirm the judgment of conviction.