WIEAND, J.,
— On April 17, 1967, an unattached truck cab driven on U. S. Route 22, in Whitehall Township, by defendant, Maurice J. Croizier, left its lane of travel, climbed partially over the medial barrier, and collided with a tractor-trailer unit moving in the opposite direction. Garrón, Inc., owner of the damaged tractor, and R. & F. Truck Rental, Inc., owner of the trailer, instituted this action in trespass to recover damages caused to their property as a result of the collision. Following trial by jury, verdicts were returned in favor of plaintiffs and against Croizier and his alleged employer, Jacoby Transportation System, Inc. Jacoby filed motions for judgment n.o.v. and a new trial, and those motions, following argument, are before the court en banc for disposition. The only issue argued by Jacoby is the sufficiency of the evidence to sustain the jury’s finding that Croizier was its employe at the time of the accident.
The evidence demonstrated that Croizier was the owner of the tractor involved in the accident. On March 13, 1967, approximately a month before the accident, he had leased it to Jacoby pursuant to the terms of a written lease. Those terms provided, inter alia, that gas, oil and maintenance costs would be paid by Croizier, but otherwise the Lessor “shall surrender full control, possession, and management of said equipment to the LESSEE.” The leased equipment, it was agreed “is in the exclusive possession, control, and use of the authorized carrier LESSEE and that the LESSEE assumes full responsibility in respect to the equipment it is operating, to the public, the shippers, and the INTERSTATE COMMERCE COMMISSION.”
Under this arrangement, Jacoby regularly instructed Croizier concerning the place where he should *565 pick up a load and the destination to which the load was to be delivered. While carrying loads assigned to him by Jacoby, Croizier was required to comply with certain rules and regulations adopted by Jacoby. His tractor unit was identified by an attached device which proclaimed “Jacoby Transportation System.” For the use of his equipment and his services as driver, Croizier was paid a percentage of the gross revenue derived by Jacoby from the haul. From the compensation paid to Croizier no deductions were made for income tax withholding or Social Security contributions, but at the end of the year a statement of his total earnings was given to him. He had no regular hours but worked as was necessary to transport the cargo assigned to him. Croizier worked exclusively for Jacoby and drove for no other carrier. Although Jacoby’s dispatcher testified that there would have been no objection to his driving for another carrier, the lease agreement clearly gave Jacoby exclusive possession of Croizier’s unit. The relationship between Croizier and Jacoby, it was conceded, was terminable at the will of the carrier.
Croizier and his witnesses testifiéd that on the Monday of the accident, he had delivered a shipment to Philadelphia, returning to Jacoby’s terminal building and yard about noon. He was then instructed to deliver a load of steel to Sinking Springs, Pa. This load had been picked up on the previous Saturday, but it had been left standing at Croizier’s home in Lynnville, Pa., so that he could comply with the dispatcher’s instructions to make the Philadelphia delivery on Monday morning. He was driving home to pick up the trailer load of steel when the accident occurred. This testimony was contradicted by Jacoby’s dispatcher, who testified that Croizier was finished for the day and was driving the tractor on his own *566 business at the time of the accident. The jury, however, accepted Croizier’s version, and Jacoby does not question the sufficiency of the evidence to support such a finding.
It is revealing that, shortly after Croizier’s accident, it was Jacoby who dispatched another driver to deliver the load of steel to Sinking Springs.
Jacoby’s contention is that the evidence was insufficient to establish the existence of an employer-employe relationship. On the contrary, he argues, it demonstrates that Croizier was an independent contractor.
“Speaking generally,” the court said in George v. Nemeth, 426 Pa. 551, at pages 553 and 554, “‘the hallmark of an employee-employer relationship is that the employer not only controls the result of the work but has the right to direct the manner in which the work shall be accomplished; the hallmark of an independent contractee-contractor relationship is that the person engaged in the work has the exclusive control of the manner of performing it, being responsible only for the result’ . . .”
In Stepp v. Renn, 184 Pa. Superior Ct. 634, at pages 637 and 638, the principles for determining the nature of the relationship were reviewed as follows. “The precise nature of the relationship of the parties, under the evidence, presents a question of fact which it is the exclusive function of the jury to determine, after proper instructions by the court as to the matters of fact to be considered, except where the facts . . . are not in dispute and the evidence is direct and certain, presenting no question of credibility and having no sufficient ground for inconsistent inferences of fact: Joseph v. United Workers Association, 343 Pa. 636, 23 A. 2d 470 (1942); Burns et al. v. Elliott-Lewis Electrical Co., Inc., 118 Pa. Superior Ct. 243, 179 A. 47 (1935).
*567 “The courts have not formulated a hard and fast definition for the determination of whether any given relationship is one of independent contractor or that of employer-employe. They have, however, set forth indicia of such relationship to be used as guides in making such a determination, some of which are: Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is a part of regular business of the employer, and also the right of employer to terminate the employment at any time: Feller v. New Amsterdam Casualty Co., 363 Pa. 483, 70 A. 2d 299 (1950); Johnson v. Angretti et al., 364 Pa. 602, 73 A. 2d 666 (1950). These indicia are not to be considered as circumstantial in nature and whether some or all of them exist in any given situation is not absolutely controlling as to the outcome, each case must be determined on its own facts.” See also Feller v. New Amsterdam Casualty Company, 363 Pa. 483, 486-487.
“The difficulty arises,” suggests Justice Roberts in George v. Nemeth, supra, at page 554, “in the application of these general principles to the facts of a given case. Since each case must be decided on its own facts, the existence of all or some of the factors discussed ... is not necessarily controlling.”
In the instant case, the inferences to be drawn from the evidence are conflicting. Although some factors, such as the manner in which Croizier was paid, as well as his duty to maintain the equipment, would seem at first blush to support Jacoby’s position, these factors are not controlling. Other indicia tend to establish the existence of an employer-employe *568 relationship. Jacoby was in the business of providing truck transportation for shippers. In order to obtain drivers and equipment, it entered agreements by the terms of which the equipment was leased to Jacoby. Jacoby thereby became entitled to exclusive possession of the equipment and was responsible for it to the public, shippers and the Interstate Commerce Commission. Jacoby’s drivers operated the leased equipment and received daily instructions pertaining to the loads to be carried and the deliveries to be made. Those drivers, moreover, were required to comply with Jacoby’s rules and regulations, and their employment could be terminated at any time by Jacoby. If a driver became unable to deliver a load, it was not he who was required to obtain a substitute driver but Jacoby, who simply assigned the delivery to another one of its drivers. And last, but of great significance, the truck was plainly adorned with devices proclaiming the Jacoby name.
In Fullerton v. Motor Express, Inc., 375 Pa. 173, at pages 175 and 176, Mr. Justice Musmanno, in colorful style, pertinently wrote: “The law is clear that an identifying sign on a commercial vehicle declares its reputed ownership as much as a flag proclaims the nationality of the ship which flies it. If the ship is sailing under false colors it will have to answer for the deception. If a name on a vehicle misstates ownership, opportunity is afforded the named person or firm to disprove the asserted proprietorship.
“In Sefton v. Valley Dairy Co., 345 Pa. 324, 326, we said: ‘It is well settled by our previous decisions that the presence of a defendant’s name on a commercial vehicle raises a rebuttable presumption that the vehicle is owned by defendant and that the driver of the vehicle is a servant of defendant acting within the scope of his employment . . . This presumption is *569 sufficient to take the case to the jury even though defendant produces uncontradicted evidence that the driver was not its employee ... or produces evidence that it did not own the vehicle in question.’
“The most elementary rules of logic, woven into the fabric of correlative social responsibility, as well as the requirements of simple justice, demand that the law be as above indicated. The person who is struck down by a strange vehicle cannot automatically know the business of the owner of the vehicle; and, even with the most diligent inquiry, he may not be able to ascertain the nature of the mission to which the driver was committed at the time. Hence the imperative necessity of the presumption, in a situation of this kind, that the first person or firm to be called to answer for the mishap should be the person or firm whose name decorates the offending vehicle.
“Any business organization which permits a commercial conveyance to ply the public highways prominently proclaiming its name owes a duty to the public to stand by that voluntary self-advertising proclamation. That responsibility, of course, is not absolute. The named firm may introduce evidence to show that the identifying trappings were camouflage, or innocent coincidence, or that, although admitting ownership of the vehicle, the driver thereof ignored instructions and headed for Chicago instead of New York as directed. But such explanations are for the jury to evaluate and appraise in the light of all the surrounding circumstances.” See also Capozi v. Hearst Publishing Company, Inc., 371 Pa. 503, 511, and Lindenmuth v. Steffy, 173 Pa. Superior Ct. 509, 511.
For these reasons, we believe that the nature of the relationship existing between Croizier and Jacoby at the time of the accident was for the jury to determine upon proper instructions from the court. *570 Jacoby does not question the accuracy or the adequacy of the trial court’s charge. The jury found the relationship to be one of employer and employe. That verdict will not be disturbed.
ORDER
Now, June 1, 1971, it is ordered that the motions of Jacoby Transportation System, Inc. for judgment n.o.v. and for a new trial be and the same are hereby dismissed, and upon praecipe the prothonotary may enter judgments on the verdicts.