525 So.2d 535 (1988)
STATE of Louisiana
v.
Jimmy Rogers MARTIN.
No. 87-KA-872.
Court of Appeal of Louisiana, Fifth Circuit.
April 18, 1988.
Rehearing Denied June 17, 1988.
*536 Harry J. Morel, Jr., Dist. Atty., Kurt Sins, Gregory C. Champagne, Asst. Dist. Attys., Hahnville, for plaintiff-appellee.
Randell O. Lewis, Luling, for defendantappellant.
Before KLIEBERT, GAUDIN and GRISBAUM, JJ.
KLIEBERT, Judge.
Defendant, Jimmy Rogers Martin, was convicted by a six person jury of two counts of negligent homicide. He was sentenced to five years at hard labor on each count, to run concurrently. The sentences were suspended and defendant was placed on five years active probation with the following special conditions:
(1) Serve two years in parish jail, at night, so that he could support his family;
(2) Suspension of driving privileges for ten years;
(3) Pay restitution in the amount of $10,000.00 by garnishment of one-fourth of wages;
(4) Pay a fine of $1,500.00 plus court costs and statutory parole supervision fees. *537 Defendant appealed his convictions and sentences. For the reasons which follow, we affirm the convictions but vacate the sentences imposed and remand the case to the trial court for resentencing.
On December 31, 1986, at approximately 6:00 p.m., the defendant was driving a green Ford on Highway 90, following a Chevrolet Nova. After both vehicles passed other vehicles at a high rate of speed, the Chevrolet Nova struck the rear of a Chevrolet Blazer occupied by Bryan Boudreaux and Eva Trevasos. The Blazer was knocked off the roadway, became airborne, and turned over. Both occupants were killed. After the Chevrolet Nova struck the Blazer, the defendant's car struck the rear of the Nova. The defendant and the driver of the Nova, Vincent Jenkins, were convicted by juries of two counts of negligent homicide.
In his first assignment of error defendant contends the trial court erred in failing to grant a defense request for $600.00 to hire an accident reconstruction expert. Defendant contends such expert assistance was crucial to his defense in that he could have rebutted the state's opinion evidence as to the speed of the vehicles prior to the impact. The trial court held an evidentiary hearing to determine indigency, and from the evidence submitted concluded the defendant was not so indigent as to warrant funds to hire an expert. The defendant apparently accepted the finding he was not indigent for he makes no mention of it in his brief in this court. Accordingly, his assignment of error and arguments have no application to this case because he was not indigent.
In his second assignment defendant contends the trial judge erred in accepting Trooper Willumitis and Trooper Giarusso as accident reconstruction experts.[1] Defendant did not object at trial to the court's acceptance of Trooper Giarusso as an expert witness. Therefore, the issue cannot be raised at this time. La.C.Cr.P. Article 841. As regards the acceptance of Trooper Willumitis as an expert, LSA-R.S. 15:466 provides guidance:
"The test of competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give evidence as an expert his competency so to testify must have been established to the satisfaction of the court."
The determination of the competency of an expert witness is a question of fact and the trial court's ruling should not be disturbed in the absence of manifest error. State v. Self, 353 So.2d 1282 (La.1977); State v. Mitchell, 476 So.2d 825 (5th Cir.1985).
In the instant case Trooper Willumitis testified that he had a bachelor's degree in criminal justice and had also attended the Jefferson Parish Sheriff's Office Academy, the Louisiana State Police Academy, and the Louisiana State Police Advanced Technical Accident Investigation School. Additionally, he served as a law enforcement officer for nineteen years, the past twelve as an accident investigator for the state police. He has been qualified as an expert in the 24th Judicial District Court, the 29th Judicial District Court and the United States District Court for the Eastern District of Louisiana.
Trooper Willumitis explained the method used in calculating the defendant's speed, which he estimated to be a minimum of sixty-five miles per hour. He further testified that he understood the formula by which speed was calculated, although he admitted to not having specific training in calculus and physics. The mathematical formulas used were developed by the Northwestern University Traffic Institute in Evanston, Illinois, which, according to the trooper's testimony, is considered the authority on accident investigation and reconstruction. Trooper Willumitis further testified to the potential for error in the formula and how the data was obtained.
We discern no manifest abuse of the trial court's discretion in accepting Trooper Willumitis *538 as an expert in accident reconstruction and hence conclude this assignment of error is meritless.
Defendant next contends the trial court erred in allowing the state to solicit opinions as to the speed of the defendant's vehicle and whether he was drag racing from lay witnesses. Immediately prior to the accident defendant's vehicle passed vehicles driven by C.J. Morales, the operator of a wrecker service; Rachel Besancon, and Lt. Marcel Null, an off-duty Houma police officer. At trial the state asked each witness to estimate the speed at which the defendant's vehicle went by. Morales estimated 80 mph +; Besancon estimated "at least 80 mph", and Lt. Null estimated 90 to 100 mph. Defendant contends the estimates given were inadmissible opinion evidence.
In State v. Kahey, 436 So.2d 475, 490-91 (La.1983) the supreme court said:
"Generally speaking, a witness can testify `only as to facts within his knowledge, and neither as to any recital of facts heard by him, nor as to any impression or opinion that he may have.' La.R.S. 15:463. However, in applying this rule limiting opinion we have recognized that it states a guiding principle containing several variables. The terms `fact' and `opinion' denote merely a difference of degree of concreteness of description or a difference in nearness or remoteness of inference. The opinion rule operates to prefer the more concrete description to the less concrete, the direct form of statement to the inferential. State v. Wheeler, 416 So.2d 78 (La.1982). For this reason we have allowed certain testimony which might be termed `opinion' when it is clear from the circumstances that the witness drew a reasonable inference from his personal observations. See State v. Vanderhoff, 415 So.2d 190 (La.1982). However, in deciding whether to admit such testimony the trial judge should consider several factors, including whether the testimony relates only to a collateral matter or to the ultimate issue of the case. Cf. State v. Wheeler, supra. See McGormick, Evidence, § 12 at 26-29 (Cleary ed. 1972)."
A lay witness may draw natural inferences from facts personally observed by him as to speed. See State v. Stewart, 357 So.2d 1111 (La.1978); State v. Lemoine, 403 So.2d 1230 (La.1981). Here each of the witnesses testified as to the foundation for their estimate of the defendant's speed. Each based the estimate on the speed of their own vehicles as the defendant passed. Lt. Null had been a road officer for 15 years, and Morales had extensive highway driving experience in his role as the operator of a wrecker service.
In light of the foundation laid by the state in support of the witnesses' estimate of the defendant's speed, we discern no error in the trial court's decision to admit the witnesses' testimony, which was based more on reasonable inference than opinion. Likewise, we find that Morales' testimony that the defendant was "drag racing" was based on reasonable inferences drawn from personal observations. Morales testified the defendant and Jenkins moved down the road at "high speeds ... bumper to bumper ... side by side ... switching in and out ..." This testimony shows that Morales' classification of the defendant's actions as drag racing were reasonable inferences drawn from his personal observations rather than the expression of an opinion.
Defendant next contends that no person can be convicted as a principal to the crime of negligent homicide. His argument is grounded in the fact that his vehicle never struck the vehicle in which the decedents were riding and did not in any manner cause the decedent's vehicle to leave the roadway. Specifically, defendant asserts that a person cannot be convicted as a principal to the crime of negligent homicide since that crime does not require intent. The defendant argues one must have some intent to be a principal. He reasons that just as it is impossible to attempt negligence or to conspire to be negligent, it is also impossible to be a principal to negligence since that would require intent.
*539 The current law (LSA-R.S. 14:24) defines principals as all persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or procure another to commit the crime. Thus, anyone who is a principal is a perpetrator; they are not separate entities. It is however necessary that a person associate himself with the unlawful activity. Here the unlawful activity or criminal negligence which led to the killing of two people was the "drag racing." Once the state established the defendant was "drag racing" and the drag racing resulted in an accident in which two people were killed, it proved the negligent homicide, which is defined by LSA-R.S. 14:32 as: "... the killing of a human being by criminal negligence." Hence, we conclude this assignment of error is without merit.
Defendant contends several statements made by the prosecutor during closing arguments should have resulted in a mistrial or an admonishment from the trial judge. The first was a statement by the prosecutor to the effect that if he thought a prosecution witness was lying he would have dismissed the case. Defendant contends the prosecution injected personal beliefs into the case, in violation of La.C.Cr.P. Article 774. The prosecutor's statement, while perhaps improper, was harmless rather than reversible error. See State v. Barrow, 410 So.2d 1070 (La.1982).
During the rebuttal argument by the prosecutor the following exchange occurred:
"(MR. SINS) ... one of the defense tricks in most jury trials is to confuse the issue, criminal trials. If any of you have been in the army or you've seen war stories and stuff. Boy, if that defense guy over there, the Jap, the German or whatever, has got a rifle
MR. LEWIS:
Objection, Your Honor. I'm not a Jap or a German or anything like that. I'm an American.
THE COURT:
Mr. Lewis, it's not appropriate for you to interject during the closing statement of the District Attorney.
STATE'S REBUTTAL RESUMED BY MR. SINS:
Thank you, Your Honor. If you got the commipinko or whatever you want to call it, that guy on the other side of MR. LEWIS:
Judge. Judge, again I'm going to object to being referred to in that manner. I don't do it to him. I don't expect it from him to me.
MR. SINS:
Your Honor, I am not making a reference to Mr. Lewis as being one of those people.
MR. LEWIS;
I move for mistrial on that basis, prosecutorial misconduct."
Defendant contends a mistrial should have been granted pursuant to C.Cr.P. Article 770 because the prosecutor referred to race or national origin and thereby created prejudice against the defendant in the mind of the jury. We disagree.
The prosecutor's statement was a poorly articulated criticism of defense tactics rather than a conscious reference to the national origin of the defendant. The prosecutor explained to the jury that he was not calling the defense "commi-pinko or anything," but rather was simply trying to get the jury to envision a battlefield where smoke screens were utilized as a defense mechanism. Considering the cited remarks in context to the entire argument, together with the prosecutor's clarification of the point he was trying to make, we discern no prejudice to the defendant of a sufficient nature as to warrant the drastic remedy of a mistrial. See State v. Williams, 375 So.2d 364 (La.1979).
Defendant also complains of the following statement made during the prosecutor's rebuttal argument in response to argument by defense counsel that a defendant could not be convicted as a principal to negligent homicide:
"... With respect to all this, again, mumbo jumbo, smoke about, it's not the law.
*540 They can't be guilty of that. If that were the case, a motion to suppress is filed by the defense, the Judge says that's right. We aren't even here."
Although the prosecutor incorrectly stated the law, as indicated in the final assignment, the error was cured by the judge's charge to the jury. See State v. Holmes, 388 So.2d 722 (La.1980).
In our view, therefore, the assignments of error relating to statements made during closing argument are meritless.
In his final assignment defendant contends the court erred in refusing to instruct the jury that the issue of whether or not the defendant could be guilty as a principal to the crime of negligent homicide could not be decided by a motion to suppress or by a motion to quash prior to trial. A review of the trial transcript reveals that after some discussion among the attorneys and the judge it was agreed the jury would be instructed that they were the ultimate judges of law and facts but that the law must be taken from the trial judge's instruction. Counsel for defendant agreed to the modified instruction. He cannot now be heard to complain that the instruction as originally proposed was not given. La.C. Cr.P. Article 801.
We have also reviewed the record for errors patent on its face and discovered that the sentence imposed is illegal in several respects. The maximum prison term upon conviction of negligent homicide is five years. The court imposed concurrent terms of five years imprisonment, suspended the sentence, placed the defendant on active probation for a period of five years, and ordered him to serve two years in prison as a condition of probation. The sentence is illegal in that it exposes the defendant to a prison term in excess of five years should his probation be revoked after or during the course of his two year probationary prison term. See State v. Jones, 477 So.2d 914 (4th Cir.1985); State v. Newell, 497 So.2d 4 (4th Cir.1986). Moreover, the court ordered that the defendant's driving privileges be suspended for ten years. Since the maximum probationary period authorized by La.C.Cr.P. Article 893 is five years, it would appear the suspension of the defendant's driving privileges for ten years is violative of La.C.Cr.P. Article 893 and is excessive.
Accordingly, although we affirm the convictions, we vacate the sentences and remand the case to the trial court for resentencing.
CONVICTIONS AFFIRMED, SETENCES VACATED AND CASE RMANDED FOR RESENTENCING.
NOTES
[1] Trooper Giarruso computed the co-efficient of friction which Trooper Willumitis utilized in computing the speed of the defendant's vehicle.