**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Brian R. JACKSON, II, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 7, 1999.

Filed Dec. 28, 1999.

Fred J. Lagattuta, Pittsburgh, for appellant.

Daniel Fitzsimmons, Deputy Dist. Atty., Pittsburgh, for Com., appellee.

Before DEL SOLE, SCHILLER and BROSKY, JJ.

DEL SOLE, J.:

¶ 1 This appeal is taken from a judgment of sentence imposed after Appellant was convicted in a bench trial of Homicide by Vehicle, Involuntary Manslaughter, Recklessly Endangering Another Person, Criminal Conspiracy and summary traffic violations.

¶ 2 Appellant contends that he was not responsible for the fatal automobile accident which gave rise to the charges against him, and therefore his conviction cannot be supported by law or by the weight of the evidence presented. Appellant's convictions result from a collision which occurred in April of 1996. The trial court recounted the evidence presented at trial detailing the events which culminated in the fatal accident.

[T]he evidence presented by the Commonwealth established that the Defendant and his brother, Stephen Jackson, engaged in a drag race in the Brookline Boulevard area of the City of Pittsburgh. Numerous witnesses testified to conduct from which it could be readily inferred that the Defendant and his brother were racing their vehicles on roadways of this Commonwealth. Eyewitness testimony placed the Defendant's vehicle and his brother's vehicle in close proximity shortly before the time of the accident in question.

Testimony presented by Commonwealth witnesses revealed that shortly before the two brothers' vehicles disappeared from the sight of onlookers, these vehicles were neck and neck at a high rate of speed. Once these vehicles disappeared from eyesight, witnesses heard the unmistakable sound of an automobile collision. Within a matter of seconds, observers noted that the vehicle of Stephen Jackson had collided with a vehicle driven by the decedent, Mr. Richard Smith. Smith was apparently in the process of making a u-turn (sic) at the time of the collision.

The Defendant's vehicle was seen a short distance beyond the site of the accident, and did not physically impact with either his brother's vehicle or that driven by the decedent.

Expert testimony presented by the Commonwealth established that the speed of Stephen Jackson's vehicle was seventy-six (76) miles per hour prior to impact with Mr. Smith's vehicle. The Defendant's expert opined that Stephen's vehicle was traveling at a speed of seventy (70) miles per hour, rather than the seventy-six (76) miles per hour as reported by the Commonwealth expert. In either event, this disparity is insignificant, as the posted speed limit in this area is twenty-five (25) miles per hour.

Mr. Smith ultimately died from the injuries sustained in this accident, resulting in charges being filed against both Stephen Jackson as a juvenile and his brother, the Defendant herein, as an adult.

Trial Court Opinion 11/6/98 at 2–3.

¶ 3 Appellant initially alleges that the trial court failed to consider the decedent's actions as possibly diminishing Appellant's responsibility as the direct and substantial cause of death. Appellant alleges the decedent was performing an illegal U-turn close to the crest of a hill and near a bend in the road at the time his vehicle was struck. Appellant claims that the trial

court failed to consider the concept that the victim's actions can serve to diminish a defendant's criminal responsibility.

¶4 Our Supreme Court in *Commonwealth v. Uhrinek*, 518 Pa. 532, 544 A.2d 947 (1988) determined that a defendant charged with Homicide by Vehicle must be permitted to introduce evidence of the decedent's intoxication and the resulting inference that it was the decedent's own disregard of his circumstances which caused the accident. Likewise in *Commonwealth v. Bartolacci*, this court remarked: "In a criminal trial where the jury has the responsibility of determining the 'direct cause' of death in order to decide whether or not to covict [sic] the defendant of homicide by vehicle, evidence of other factors which may have been the direct cause of death is clearly appropriate." 409 Pa.Super. 456, 598 A.2d 287, 290 (1991).

¶5 Thus, it was proper for the trial court in this case to admit and consider evidence of the decedent's driving, including the illegal U-turn and evidence of his consumption of alcoholic beverages. However, upon review of the record and the trial court's statements in its opinion, it is evident that the court allowed the admission of this evidence and considered it, but ultimately rejected it as the legal cause of the accident. The court stated: "The Defendant's assertions that we failed to consider the [decedent's] contributory negligence in making an illegal u-turn (sic) and in consuming alcoholic beverages is without merit. We permitted the Defendant to offer this testimony, considered this testimony and rejected it in reaching our decision." Trial Court Opinion, 11/6/98, at 6. We will not presume to conclude that the trial court has not done what, in fact, it states it has done.

¶6 Appellant further contends that he cannot be held responsible for the crimes for which he was convicted under an accomplice liability theory. Appellant claims his conviction of the crimes charged cannot rest on the fact that he was an accomplice to the drag race, where his vehicle did not strike the victim or the victim's vehicle. In support of his position Appellant cites to *Commonwealth v. Root*, 403 Pa. 571, 170 A.2d 310 (1961). There the defendant and decedent were engaged in a high-speed race on a rural highway. The decedent attempted to pass the defendant, crossed the centerline and drove head-on into an oncoming truck. The court ruled that the defendant's conduct was not the proximate cause of the decedent's death. It remarked that "the deceased was aware of the dangerous condition created by the defendant's reckless conduct in driving his automobile at an excessive rate of speed along the highway, but despite such knowledge, he recklessly chose to swerve his car to the left and into the path of an oncoming truck, thereby bringing about the head-on collision which caused his own death." *Id.* at 314.

¶7 The trial court distinguished the *Root* decision from the present case. First, it noted that the decedent in *Root* was one of the racing drivers and that he chose to attempt to pass the defendant, resulting in his driving into the path of an oncoming truck. Thus, the driver in *Root* was responsible for his own death. Secondly, the trial court noted that the *Root* decision was made prior to the existence of the Pennsylvania Crimes Code which now provides:

(a) **General rule.**—a person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) **Conduct of another.**—A person is legally accountable for the conduct of another person when:

. . .

(3) he is an accomplice of such other person in the commission of the offense.

**274**

**(c) Accomplice defined.**—a person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

. . .

(ii) aids or agrees or attempts to aid such other person in planning or committing it.

18 Pa.C.S.A. § 306.

¶ 8 The trial court noted that in this case Appellant and his brother agreed to engage in a high-speed race and that they should have been aware that their conduct could result in an accident involving death or serious bodily injury. We find support for this conclusion in the record and agree with the trial court that this ruling does not conflict with our Supreme Court's decision in *Root*.

¶ 9 In making its decision the trial court examined factually similar cases from other jurisdictions which reached a like conclusion with regard to accomplice liability. *See State v. Martin*, 525 So.2d 535 (La. App.1988) (affirming conviction for negligent homicide where defendant was engaged in a drag race which resulted in the death of two individuals, despite the fact that the defendant's vehicle never struck the decedents' vehicle.); and, *Pineta v. State*, 98 Md.App. 614, 634 A.2d 982 (Md.1993)(upholding an automobile manslaughter conviction where defendant engaged in a drag race and other racer struck and killed motorist.) *See also* J.A. Connelly, Annotation, *Who Other than Actor is Liable for Manslaughter*, 95 A.L.R.2d 175 (1964).

¶ 10 The trial court concluded that Appellant's conduct, as well as his brother's, was a direct and substantial factor in Mr. Smith's death. We too agree that Appellant's actions in engaging in this high-speed race, in violation of the laws designed to protect vehicular and pedestrian travelers, made it entirely foreseeable that he or another could be seriously killed or injured as a result of his conduct. Thus, it is appropriate that Appellant be held responsible for Mr. Smith's death. Accordingly, we affirm Appellant's convictions and judgment of sentence.

¶ 11 Judgment of sentence affirmed.