J-S63007-17

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| MICHAEL FRANK KRALOVIC | |
| Appellant | No. 1562 WDA 2016 |

Appeal from the Judgment of Sentence April 25, 2016
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-CR-0004702-2013

BEFORE: BOWES, J., SOLANO, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY BOWES, J.:                    FILED DECEMBER 27, 2017

Michael Frank Kralovic appeals his judgment of sentence of three to six years incarceration, plus one year probation, imposed after a jury convicted him of homicide by vehicle while driving under the influence, involuntary manslaughter, recklessly endangering another person, driving under the influence ("DUI") – general impairment, DUI – high rate of alcohol, DUI by a minor, reckless driving, and numerous other summary traffic offenses. He was acquitted of homicide by vehicle. We affirm.

On June 23, 2012, Andrew Lysell died following a tragic motor vehicle accident. During the previous evening and early morning hours of the day in question, the victim, Appellant, and Jacob Vrudney, each eighteen-years-old, drank several alcoholic beverages. Shortly before 5:30 a.m., Appellant and

Mr. Vrudney decided to leave a party. They agreed to travel by different routes to Appellant's house in order to see who would arrive first. Mr. Lysell traveled with Appellant in a Lincoln sedan, and Mr. Vrudney drove separately in a Ford S-10 pickup truck.

While traveling eastbound at eight-five miles per hour in a forty-five mile per hour zone, Appellant failed to negotiate an uphill curve along Saltsburg Road, in Murrysville, Westmoreland County. The car veered across the road and onto an embankment. It then flipped and slid back across the road, coming to rest at an angle in the eastbound lane. Appellant and Mr. Lysell exited the vehicle, and Appellant retreated to safety at the side of the road. Mr. Lysell, on the other hand, had to exit toward the westbound lane. At this moment, Mr. Vrudney, traveling seventy-eight miles per hour, sideswiped the overturned Lincoln and hit Mr. Lysell as he stood in the westbound lane. Upon impact, Mr. Lysell's body was thrown approximately thirty yards down the road, where he sustained a severe head injury upon impact. As a result of his injuries, Mr. Lysell perished. Following the accident, a blood test indicated that Mr. Vrudney had a blood alcohol content ("BAC") of 0.154%, and Appellant had a BAC of 0.135% within two hours of operating their vehicles.

Based on the foregoing, Appellant was charged with the aforementioned offenses. After protracted pre-trial litigation, including numerous continuances, a joint, three-day jury trial commenced on January

12, 2016. The jury returned a verdict as delineated above, and subsequently, the trial court imposed a sentence of three to six years incarceration for homicide by vehicle while DUI, a concurrent sentence of nine to eighteen months imprisonment for involuntary manslaughter, and one year probation for recklessly endangering another person. The court did not impose any further sentences at the remaining counts. Appellant filed a post-sentence motion, and, following a hearing, the trial court denied that motion. Appellant filed a timely notice of appeal and complied with the trial court's order to file a Rule 1925(b) concise statement of errors complained of on appeal. The court authored its Rule 1925(a) opinion, and this matter is now ready for our consideration.

Appellant raises two questions for our review:

I. Whether the verdict of guilty of homicide by vehicle while DUI, and involuntary manslaughter were supported by sufficient evidence where the victim's death was cause[d] by the driving of the co-defendant?

II. Whether the trial court erred in prohibiting [Appellant] from presenting character testimony through the victim's mother as to his good character?

Appellant's brief at 5.

Appellant's first issue challenges the sufficiency of the evidence underpinning his convictions for homicide by vehicle while DUI and involuntary manslaughter. We are guided by the following principles:

When evaluating a sufficiency claim, our standard is whether, viewing all the evidence and reasonable inferences in the light

most favorable to the Commonwealth, the factfinder reasonably could have determined that each element of the crime was established beyond a reasonable doubt. This Court considers all the evidence admitted, without regard to any claim that some of the evidence was wrongly allowed. We do not weigh the evidence or make credibility determinations. Moreover, any doubts concerning a defendant's guilt were to be resolved by the factfinder unless the evidence was so weak and inconclusive that no probability of fact could be drawn from that evidence.

Commonwealth v. Moyer, 171 A.3d 849, 852 (Pa.Super. 2017) (citation omitted).

The Vehicle Code defines the offense of homicide by vehicle while DUI as:

Any person who unintentionally causes the death of another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 is guilty of a felony of the second degree when the violation is the cause of death and the sentencing court shall order the person to serve a minimum term of imprisonment of not less than three years. A consecutive three-year term of imprisonment shall be imposed for each victim whose death is the result of the violation of section 3802.

75 Pa.C.S. § 3755(a).

In order to establish homicide by vehicle while DUI, the Commonwealth must prove beyond a reasonable doubt: "[1] a driving under the influence conviction, [2] the death of another person, and [3] the death [was] a direct result of driving under the influence." Commonwealth v. Tanner, 61 A.3d 1043, 1047 (Pa.Super. 2013) (citing Commonwealth v. Caine 683 A.2d 890 (Pa.Super. 1996) (en banc)).

A person commits involuntary manslaughter when "as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S. § 2504(a). Thus, "involuntary manslaughter requires 1) a mental state of either recklessness or gross negligence[,] and 2) a causal nexus between the conduct of the accused and the death of the victim." Commonwealth v. Fabian, 60 A.3d 146, 151 (Pa.Super. 2013) (citation omitted).

Appellant contends that the Commonwealth failed to prove that his DUI was a direct and substantial cause of the death of Mr. Lysell. He asserts that the evidence proffered at trial indicates that his co-defendant, Mr. Vrudney, directly caused the victim's death when he hit him with his pickup truck. Further, Appellant maintains that he cannot be held accountable based on a theory of accomplice liability because the evidence does not support the conclusion that he and Mr. Vrudney were racing at the time of the accident. Rather, he asserts that his accident was a separate incident unrelated to the victim's death, and the victim's own reckless behavior was an intervening factor which contributed to his demise. We disagree.

In this case, it is undisputed that Mr. Lysell died following the vehicular accidents occurring on June 23, 2012. Additionally, Appellant does not challenge the evidence supporting his convictions for DUI. Thus, his challenge to the sufficiency of the evidence underlying his convictions for

homicide by vehicle while DUI and involuntary manslaughter is centered upon whether he caused the victim's death.

> The following informs our analysis:
>
> It is undisputed that the Commonwealth must prove a direct causal relationship between the acts of a defendant and the victim's death. Criminal responsibility is properly assessed against one whose conduct was a direct and substantial factor producing the death. This is true even though "other factors combined with that conduct to achieve the result."

Fabian, supra at 152 (citations and emphasis omitted). In this regard, we have found direct criminal causation when "the defendant's [conduct] started the chain of causation which led to the victim's death[.]" Id. (citation omitted). Further, "it has never been the law of this Commonwealth that criminal responsibility must be confined to the sole or immediate cause of death." Id. (citation omitted).

In Commonwealth v. Rementer, 598 A.2d 1300 (Pa.Super. 1991), we set forth a two-part test for determining direct and substantial criminal causation. First, we determine "whether the defendant's conduct was an operative cause of the victim's death." Rementer, supra at 1305. That is, the conduct must be "an antecedent but for which the result in question would not have occurred." Id. (citation omitted). Second, we consider whether "the result of the defendant's actions were so extraordinary and remote or attenuated that it would be unfair to hold the defendant criminally responsible." Id. This second prong raises a question of foreseeability, and

requires us to consider whether the "fatal result was an unnatural or obscure consequence of the defendant's actions," so that, "our sense of justice would prevent us from allowing the result to impact on the defendant's guilt." *Id.* at 1306-1307.

Instantly, the Commonwealth proffered evidence that Appellant was driving eastbound at eighty-five miles per hour in a forty-five mile per hour zone at 5:30 a.m., when he lost control of his vehicle attempting to navigate a long curve on Saltsburg Road. At the time of the accident, Appellant had a BAC of 0.135%, well over the legal limit. As a result of Appellant's reckless driving, he lost control of his car, which then crossed the center line, traveled off the road and onto an embankment, and then flipped as it crossed back over the road. The vehicle came to a rest upside down and at an angle blocking the eastbound lane.

The evidence adduced at trial revealed that Appellant could hear the sound of Mr. Vrudney's engine as it rapidly approached while he was exiting his vehicle, and that Mr. Lysell was shouting that they had to quickly escape. Due to the manner in which the car was situated as it came to rest, Appellant was able to exit the car and proceed safely to the side of the road. Mr. Lysell, on the other hand, was forced to exit into the roadway, and ultimately, into the westbound lane of travel. At this point, Mr. Vrudney, following closely behind at seventy-eight miles per hour, drove around the

curve, sideswiped Appellant's car, and, unfortunately, crossed into the westbound lane where the victim was standing.

We find that, when viewing this evidence in the light most favorable to the Commonwealth, Appellant's conduct satisfied both parts of the Remeter causation test. First, Appellant's reckless driving caused an accident, which forced the victim into the middle of the roadway and directly in the path of oncoming traffic. But for Appellant's reckless driving, Mr. Lysell would not have been exposed and vulnerable when Mr. Vrudney sped around the curve.

With regard to the second prong, we set forth the following. The record indicates that Appellant and Mr. Vrudney left a friend's house, after a night of heavy drinking, with the intent to travel to Appellant's house by different routes in order to see who would arrive first. Nonetheless, their separate courses required them both to travel along Saltsburg Road. Appellant asserts that, relying on Commonwealth v. Jackson, 744 A.2d 271 (Pa.Super. 1999), he cannot be convicted of crimes relating to the victim's death since the Commonwealth did not proffer sufficient evidence that he and Mr. Vrudney were "racing" at the time in question.

We observe that the Vehicle Code defines "Race" as "[t]he use of one or more vehicles in an attempt to outgain, outdistance or prevent another vehicle from passing, to arrive at a given destination ahead of another vehicle or vehicle, or to test the physical stamina or endurance of drivers

over long distance driving routes." 75 Pa.C.S. § 3367 (emphasis added). This definition is consistent with a common understanding of the term. In light of those statements, and the excessive speeds at which the men were driving, it was reasonable for the jury to infer that they were engaged in illegal racing at the time of the accident.

As such, we find that it was predictable that Appellant's decision to race Mr. Vrudney at high speeds while DUI placed his passenger, Mr. Lysell, in danger of death or serious bodily injury. Moreover, after Appellant crashed and blocked the roadway, it is unsurprising that the victim attempted to flee that vehicle for safety, especially in light of the sound of Mr. Vrudney's truck fast-approaching. Finally, with Mr. Vrudney traveling at high speeds close behind, it was abundantly likely that any accident involving the front car, that is, Appellant's vehicle, risked endangering the second car. Hence, based on the foregoing, we conclude that Appellant could have foreseen that his decision to race Mr. Vrudney while DUI could result in Mr. Lysell's death.

Rementer, supra, is instructive. In Rementer, Charles Rementer was convicted of third-degree murder. This conviction arose after Mary Berry was crushed to death by a vehicle as she attempted to escape an ongoing assault perpetrated by Rementer. The pertinent facts are as follows. Ms. Berry and Rementer engaged in a violent and public domestic dispute after ingesting cocaine together. The argument began at a bar, and

after she became extremely upset, Ms. Berry left the bar and entered her truck, which was parked out front. Rementer followed her, pushed Ms. Berry out of the driver's seat, and drove away. A struggle ensued wherein Ms. Berry attempted numerous times to escape from Rementer's violent attacks, including by attempting to climb out of the truck's window and fleeing from Rementer on foot. Finally, Ms. Berry, with Rementer following close behind, ran into traffic and attempted to enter a vehicle driven by Vito Michielli and occupied by his wife and two children. Ms. Berry cried for help and pleaded with Mr. Michielli to let her in the car, but Mr. Michielli, frightened, locked the doors and drove away. Ms. Berry was crushed to death by the car as it left the area.

On appeal, Rementer argued, inter alia, that the Commonwealth failed to present sufficient evidence that he caused Ms. Berry's death. In finding that the Commonwealth had proffered sufficient evidence, we established and applied the two-part test delineated above. With regard to the first prong, Rementer contended that the argument he was having with Ms. Berry had ended when she sought help from Mr. Michielli. He maintained that Ms. Berry's own actions were intervening factors unrelated to the earlier dispute, and thus, that he could not have caused her death. We found that the evidence supported that the dispute was ongoing, and that Ms. Berry sought help directly in response to Rementer's actions, noting that he was "chasing right behind her." Rementer, supra at 1308.

With regard to the second prong, Rementer asserted that Ms. Berry's death was the result of an unforeseeable chain of events. Again, we disagreed. We found that Ms. Berry's attempt to escape from the assault was entirely expected, observing, "it is completely natural and foreseeable that any victim of an assault would respond to the danger by trying to escape it." Id. Further, we stated, "[t]he risk that [Ms.] Berry might suffer serious injury or death either during the assault or in her attempt to avoid it, was inherent in the situation [Rementer's] attack created." Id. We concluded that Rementer was the direct cause of Ms. Berry's death since it would be "absurd to argue that the fatal result was so extraordinary or accidental that [Rementer] should not be held criminally liable for the consequences of his conduct." Id.

The case sub judice is analogous to the circumstances presented in Rementer, supra. Herein, Appellant participated in a high-speed race with another vehicle after both drivers imbibed alcoholic beverages. Appellant's conduct was so inherently dangerous that it was completely foreseeable that Mr. Lysell, his passenger, might suffer serious bodily injury or death during the race to Appellant's house. As noted above, but for Appellant's conduct, Mr. Lysell would not have been faced with the danger from which he was attempting to escape when he was struck by Mr. Vrudney's S-10 pickup truck. As such, we are not persuaded by Appellant's contentions that the victim's inebriated state or Mr. Vrudney's actions were intervening factors

obviating Appellant's culpability. We acknowledge that Mr. Vrudney was the immediate cause of Mr. Lysell's death. Nevertheless, Appellant set in action a chain of causation that directly and substantially caused the same.[1] No relief is due.

Next, Appellant challenges the trial court's ruling prohibiting him from offering the testimony of the victim's mother as character evidence of his reputation for safe driving. When reviewing a trial court's evidentiary determination,

> we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence or the record.

Commonwealth v. Diehl, 140 A.3d 34, 41 (Pa.Super. 2016) (citation omitted). Character evidence is "not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(a)(1). However, in a criminal case, "a defendant may offer evidence of

---

[1] Appellant's argument largely conflates the "immediate cause" of death with the "direct cause" of death. As explained infra, the direct cause of one's death is a legal term of art that does not necessarily track the common understanding of the phrase. Thus, although there can only be one "immediate cause" of a person's death, there can be multiple "direct causes."

the defendant's pertinent trait, and if the evidence is admitted, the prosecution may offer evidence to rebut it[.]" Pa.R.E. 404(a)(2)(A).

Appellant argues that the trial court abused its discretion in determining that the victim's mother could not testify on his behalf since the testimony of family members might lack credibility. He maintains that the victim's mother was not his family member, and that she could offer testimony for his reputation for safe driving, which she learned from other members of the victim's family.

We need not determine whether the trial court abused its discretion in this regard, as we find that, even if the trial court erred, that error was harmless. An error is considered harmless where: "(1) the error did not prejudice the defendant or the prejudice was de minimis; or (2) the erroneously admitted evidence was merely cumulative or other, untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict." Commonwealth v. Gause, 164 A.3d 532, 540 (Pa.Super. 2017) (citing Commonwealth v. Williams, 573 A.2d 536, 538-39 (Pa. 1990)).

Instantly, we find that the evidence of Appellant's guilt was so overwhelming that the prejudicial effect of not permitting the victim's mother to testify as to his reputation for safe driving was insignificant. As

described above, the Commonwealth proffered evidence that Appellant was driving at eighty-five miles per hour in a forty-five mile per hour zone while intoxicated. Appellant was decidedly not operating his vehicle in a safe manner at the time of the accident. We find that the testimony of the victim's mother that Appellant had a reputation in the community for being a safe driver would not be sufficient to overcome the extensive, and uncontroverted, evidence of his guilt. Thus, no relief is due.[2]

Judgment of sentence affirmed.

_____

[2] As a final matter, we observe that Appellant's sentence is premised upon the application of the mandatory minimum sentence provision contained within 75 Pa.C.S. § 3735. Recent United States and Pennsylvania Supreme Court case law has caused this Court to look with a suspicious eye toward the application of any mandatory minimum sentence. See Alleyne v. United States, 133 S.Ct. 2151 (2013); Commonwealth v. Hopkins, 117 A.3d 247 (Pa. 2015) (finding 18 Pa.C.S. § 6317 unconstitutional); Commonwealth v. Wolfe, 140 A.3d 651 (Pa. 2016) (finding 42 Pa.C.S. § 9718 unconstitutional). In those cases, our Supreme Court has stressed that certain features of those sentencing provisions cannot be maintained in light of Alleyne, notably, any statute that requires the sentencing judge, as opposed to the jury, to find at sentencing any fact that increases punishment. As § 3735 does not display the traditional hallmarks of a statute that conflicts with Alleyne, and Appellant has not challenged the constitutionality of his sentence, we will not analyze that issue herein, despite our ability to do so sua sponte. Commonwealth v. Mosley, 114 A.3d 1072, 1087 (Pa.Super. 2015). Nevertheless, we are cognizant that our Supreme Court continues to grapple with the constitutionality of various mandatory minimum sentence statutes. See Commonwealth v. Resto, 125 A.3d 449 (Pa.Super. 2015), petition for allowance of appeal granted, 636 Pa. 462 (Pa. 2016).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>12/27/2017</u>